IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 24, 2004 Session

# DANA BRYAN ELLIS v. SUSAN LYNN ELLIS (JOHNSON)

**Appeal from the Circuit Court for Hamilton County**
**No. 91 DR 2801    L. Marie Williams, Judge**

**FILED MAY 17, 2004**

**No. E2003-01327-COA-R3-CV**

Several years after Dana Bryan Ellis ("Father") and Susan Lynn Ellis (Johnson) ("Mother") were divorced, Mother filed a petition seeking to increase Father's child support payments. Father filed a counterclaim seeking a downward deviation in his child support payments claiming he was exercising visitation in excess of that contemplated by the Child Support Guidelines. After a trial, the Trial Court found Father's annual gross wages were $80,000 and set current child support payments based on that amount. The Trial Court also awarded retroactive child support to the date the petition for modification was filed and concluded the retroactive support also should be based on Father's current salary of $80,000. The Trial Court denied Father's request for a downward deviation after concluding it was in the best interests of the children not to reduce Father's child support payment. Father appeals. We affirm in part, vacate in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit
Court Affirmed in Part and Vacated in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and BEN H. CANTRELL, SP. J., joined.

Lisa Z. Espy, Chattanooga, Tennessee, for the Appellant Dana Bryan Ellis.

Marvin Berke, Chattanooga, Tennessee, for the Appellee Susan Lynn Ellis (Johnson).

# OPINION

## Background

Mother and Father were married in August of 1982 and divorced almost ten years later. At that time, the Trial Court concluded irreconcilable differences had arisen between the parties, declared them divorced, and incorporated into its Final Judgment a Marital Dissolution Agreement ("MDA") submitted by the parties. In the MDA, Mother was designated the primary residential parent of the parties' minor son and daughter. Father had visitation with the children every other weekend from 6:00 p.m. on Friday until the children were taken to school the following Monday morning. In the weeks that Father had weekend visitation, he also had visitation Wednesday evening from 6:00 p.m. until the children were taken to school the following morning. In those weeks Father did not have visitation on the weekends, his visitation was from Wednesday evening until the children were taken to school on Friday morning. Father also had visitation one week at Christmas and one week during the summer. The parties alternated holidays. Father's child support payment was set at $828 per month.

In September of 1995, mother filed a petition for contempt and to modify. Mother claimed Father was behind on child support payments and in contempt of the Trial Court's Final Judgment. Mother also sought to increase the amount of the child support she was receiving. Father filed an answer denying he was in contempt of court. Father also filed a counterclaim arguing that his child support payments should be decreased because he now had a third child he was obligated to support and because his visitation with the parties' two minor children was much more than was contemplated by the Child Support Guidelines ("Guidelines"). After a hearing, the Trial Court concluded Mother failed to establish she was entitled to an increase in child support payments. The Trial Court also concluded that while Father did prove his visitation with the two children was significantly more than that contemplated by the Guidelines, it nevertheless was not in the best interests of the children to lower the level of payments. An order was entered by the Trial Court on October 30, 1996, setting forth these findings. The record does not show that either party appealed this October 1996 Order.

On July 5, 2000, Mother filed another petition to modify, once again claiming Father's income had increased to such an extent that she was entitled to an increase in child support payments. In his answer, Father denied there was an increase in his income sufficient to justify an increase in his child support payments. Once again Father filed a counterclaim arguing his child support payments should be reduced due to the significant amount of time the children were spending with him. Mother later amended her petition claiming Father was in contempt of court because he was behind on child support payments. Mother also claimed that, pursuant to the MDA, the parties were required to maintain an account for their son's college education and that Father had dissipated all of the funds in this account.

A hearing was held in January of 2003. Mother testified that she is a surgical nurse employed at Erlanger Hospital in Chattanooga. The previous year she earned a gross income in

excess of $47,000, which included a large amount of overtime. The parties' son was seventeen years old and their daughter was thirteen. Mother filed a sworn income and expense statement and testified to its contents at trial. According to Mother, her monthly expenses are $1,744 more than her net income from Erlanger Hospital. This shortfall, however, does not take into account the child support payments she receives from Father. Mother also is remarried and the shortfall likewise does not take into account any financial assistance Mother receives from her current husband who is gainfully employed. When asked how much financial assistance she received on a monthly basis from her current husband, Mother testified there was "no set limit." Mother's monthly expenses for her and the two children include $550 for food, $425 for clothing, $100 for laundry, $350 for recreation, and $550 for school expenses. Mother testified the parties' son is in the eleventh grade and is a member of the band. Mother claimed the costs associated with the band are approximately $2,000 per year and that Father does not contribute toward this expense. Mother also stated she pays the car insurance expense for the son. In addition, the parties' daughter has filled out an application hoping to attend a private school.

Mother testified that Father is supposed to exercise visitation on Wednesday evening until he takes the children to school the following morning. On those weeks when Father does not have the children on the weekend, his visitation is extended to include Thursday as well. According to Mother, when the children do not attend school because of snow days or the like, she ends up missing work to care for the children because Father claims he cannot take off from work. Mother also stated that even though Father is entitled to visitation with the children during spring break every other year, he has never exercised this right. Mother maintained a diary on which she indicated the various days when Father was supposed to exercise visitation but for one reason or another did not. The diary included various dates in 1996 through 2000. Other documents show dates on which Mother claimed Father did not exercise visitation during 2001 and 2002. Mother admitted, however, that on some of the days where she indicated Father did not exercise visitation, the children were with her on vacation.

Pursuant to the original divorce decree, the parties were to maintain two already existing accounts and use these funds for the college education of their two children. It was undisputed at trial that one of these accounts contained approximately $12,800, up until the time Father began making withdrawals from this account and eventually withdrew all of the money. Father admitted making the withdrawals and explained that they were made at times when he was experiencing financial difficulties and had no other liquid assets available, such as when he needed to replace the transmission in his vehicle. Father stated he fully intended at all times on replacing the money he withdrew from this account.

With regard to the alleged child support arrearage, Mother testified that she did not receive any child support payments from Father on approximately thirteen different occasions since June of 2000 and Father was in arrears a total of $5,006.95. Mother also testified Father owed $346.31 in medical bills for the children's health care treatment.

Father testified that, to his knowledge, he had not missed any child support payments. Father testified his gross wages for 1999 totaled $57,036.54. His annual gross wages for 2000 and 2001 increased to $68,848. In 2000, Father also received $11,050 from pension and IRA distributions. For the first three months in 2002, Father worked for Contin-U-Care Home Health Inc., and earned gross wages of $17,616.04. Father then changed jobs effective April 1, 2002, and began working for Home Care Solutions, Inc. Father's gross income for the remainder of 2002 was $57,893.44, thereby resulting in total gross wages of $75,509.48 for 2002. As of the date he began working Home Care Solutions, Inc, Father's annual salary was $80,000.

Father maintained a calendar which he claimed showed the dates on which he exercised visitation with the children. According to Father, during 2002 the children were with him a total of 174 days, which was typical of the amount of time the children have been with him since 1996. Father disputed not having the children on the vast majority of the days Mother claimed to be those on which he failed to exercise visitation. Father went on to claim that there were several times he exercised visitation in addition to the regularly scheduled visitation because Mother was unable to care for the children for one reason or the other. Father testified to the various expenses he assisting in paying on the children's behalf over and above the regular child support payments, such as a class ring for his son and the like. Father also stated that he gives both children spending money.

Father filed an Income and Expense Statement with the Trial Court. According to this statement, Father's net monthly income is $4,791.80. Father's mortgage payment is $1,952.81 per month. Father claimed his monthly expenses exceeded his net income by approximately $550, not taking into account child support payments made to Mother.[1] Some of the monthly expenses listed on the statement for Father and/or the children include: $600 for installment contracts; $400 for food; $175 for laundry and dry cleaning; $350 for recreation; $100 for the barber shop; and $300 for miscellaneous expenses.

Father identified a deed showing that he had purchased a house on March 28, 1994, for $119,900. Father sold this house in March of 2000 for $185,000. Father then reinvested this money when he purchased his current house for $237,000. His new house is large enough so that the parties' two children have their own rooms when they stay with Father.

On February 27, 2003, the Trial Court entered an Order resolving the various issues presented by Mother and Father. In its Order, the Trial Court stated:

> Having heard the testimony of the parties and witnesses and reviewing the exhibits submitted into evidence, the Court finds Mr. Ellis' income for 2002 is as found in Exhibit 7 reflecting total earnings of $75,508.48. He changed employment in April of 2002,

---

[1] The income and expense statement filed by Father was based on his 2001 income. We have adjusted the relevant figures to reflect Father's current salary.

going to work for Home Care Solutions. He has testified he will be earning $80,000.00 per year. … Clearly, a modification [in Mr. Ellis' child support payments] is in order as there has been a deviation in excess of 15 percent. Under the Tennessee Child Support Guidelines, the support should be set at $1,515.84 for two children. The Court has reviewed the contentions of the parties in detail concerning the request for deviation by Mr. Ellis. The Court finds it is not in the best interests of the children for a deviation to take place. The Court finds Mr. Ellis has not carried the burden of proof of establishing that a deviation should take place and that a deviation is … in the best interests of the children. Whereas, Mr. Ellis may spend more than the time presumed by the Guidelines with the children (although the proof is conflicted on this issue), the Court finds that [the son] has band and other expenses for activities which contribute to his well-being and [the daughter] is seeking augmentation of her educational experience in ways which may incur additional expense. Accordingly, no deviation is ordered.

The Trial Court then concluded that the modification in child support should be retroactive to July 5, 2000, resulting in Father owing Mother a total of $22,689.72. The Trial Court then concluded Father also was behind $5,006.95 in child support payments and $346.31 for unpaid medical bills. Next, the Trial Court stated that Father's explanations for why he withdrew all the money out of the account being held for his son's education "do not justify his actions." The Trial then stated:

Mr. Ellis is found in contempt for failure to make child support and medical payments and for this withdrawal from the childrens' accounts and is sentenced to 10 days in jail for the child support arrearage and the medical bills, plus 10 days in jail for the contempt for withdrawing funds from the child's account, which sentences are suspended pending strict compliance with the orders of this Court.

The Trial Court established a time table for Father to pay the child support arrearage and unpaid medical bills, as well as a payment schedule for restoring the funds taken from the education fund.

Father raises two issues on appeal, which we quote in reverse order:

I.      The Trial Court erred in failing to reduce Plaintiff's child support in accordance with the Child Support Guidelines.

II.     The Trial Court erred in retroactively increasing the Plaintiff's child support obligation based on his current earnings rather that averaging his earnings during the retroactive period.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

The first issue we will address is whether the Trial Court erred when it concluded Father was not entitled to a downward deviation in his child support payments. The Guidelines detail what is to be considered income of the obligor parent and how to calculate the child support payment depending on the obligor's income and the number of children subject to support. The amount of child support established by the Guidelines was "designed to apply to situations where children are living primarily with one parent but stay overnight with the other parent at least as often as every other weekend from Friday to Sunday, two weeks in the summer and two weeks during holidays throughout the year." Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(6). The Guidelines further provide that a "court may consider a downward deviation from the guidelines if the obligor demonstrates that he/she is consistently providing more care and supervision for the children than contemplated in the rule." Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(1)(b). However, when considering whether to deviate upward or downward, primary consideration must be given to what is in the best interest of the children. Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(5).

In October of 1996, the Trial Court ruled on Father's first request for a downward deviation in child support payments, concluding Father demonstrated that he has "visited with his children significantly in excess of the every other weekend and four additional weeks contemplated by the Child Support Guidelines." Nevertheless, the Trial Court concluded it was not in the best interests of the children to reduce Father's child support payments. The record does not reflect that any appeal was taken from this October 1996 order.

In *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244 (Tenn. Ct. App. 2000), this Court acknowledged the Trial Court's discretion in setting the appropriate amount of child support payments, stating:

> Having found that the juvenile court properly determined that Mr. Kaatrude should pay back child support, we turn to the question of the proper amount of the support. Setting child support is a discretionary matter. *See State ex rel. Coleman v. Clay*, 805 S.W.2d

at 755. Accordingly, we review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.*, No. 87-136- II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed). While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

The goal of the statutes and regulations governing child support is to assure that children receive support reasonably consistent with their parent or parents' financial resources. *See Shell v. Law*, No. 03 A01-9608-CV-00251, 1997 WL 119581, at *4 (Tenn. Ct. App. March 18, 1997), *perm. app. dismissed* (Tenn. Jan. 29, 1998). The statutes and regulations promote this goal by requiring the courts to set child support using guidelines developed by the Tennessee Department of Human Services to promote both efficient child support proceedings and dependable, consistent child support awards. *See* Tenn. Code Ann. § 36-5-101(e) (Supp. 1999); Tenn. Comp. R. & Regs. r. 1240-2-4-.02(2)(b), (c) (1994).

*Kaatrude*, 21 S.W.3d at 248-49.

Addressing the Trial Court's denial of Father's most recent request for a downward deviation, it appears the reason a downward deviation was denied was the Trial Court's continuing conclusion that such a reduction in child support would not be in the best interest of the children. The Trial Court correctly observed that there was conflicting proof on whether Father continued to exercise visitation in excess of what was contemplated by the Guidelines. Although the Trial Court seemingly held that Father had not met his burden of proving increased visitation, the Trial Court also stated that while Father "may" spend more than the time contemplated by the Guidelines, due to other expenses such as band for the son and the daughter's hope of attending private school, no deviation would be ordered. The Trial Court's conclusions appear to this Court to be inconsistent as to whether Father's visitation with the children exceeded the time contemplated by the Guidelines.

In *Gray v. Gray*, 78 S.W.3d 881 (Tenn. 2002), our Supreme Court stated as follows:

The Guidelines contemplate the downward deviation of an award of support in cases in which the child spends more equal amounts of time with each parent than the schedule presumed under Tenn. Comp.

R. & Regs. 1240-2-4-.02(6). Tenn. Comp. R. & Regs. R. 1240-2-4-.04(2)(b); *see also* Tenn. Comp. R. & Regs. 1240-2-4-.02(6) ("In situations where overnight time is divided more equally between the parents, the courts will have to make a case-by-case determination as to the appropriate amount of support."). "If the child(ren) spend more time with the obligor than is assumed by Tenn. Comp. R. & Regs., ch. 1240-2-4-.02(6), . . . the obligor's child support payments *should* be reduced." *Jones v. Jones*, 930 S.W.2d 541, 545 n.5 (Tenn. 1996). Downward deviation could conceivably include even a downward deviation to zero child support.

*Id*. at 884 (emphasis added). The *Gray* Court also concluded that the use of a "comparative analysis" of the parties' relative income earnings was improper under the Child Support Guidelines inasmuch as "Rule 1240-2-4-.03(2) specifically states that 'the income of the obligee should not be considered in the calculation of or as a reason for deviation from the guidelines in determining the support award amount.'" *Id*.

The reasons cited by the Trial Court for refusing to deviate downward were the son's band expenses and the daughter's interest in attending private school. When this case was tried, however, the parties' daughter had only recently applied for admission to private school. At most this could be considered a *potential* expense. The expenses actually incurred by the parties for their children do not appear to be anything out of the ordinary or expenses which are not incurred by most parents while raising their adolescent children. It certainly benefits children when their parents have the financial wherewithal to enable them to participate in extracurricular activities. However, in the present case, as in many cases, the pot containing available funds to pay for these type of activities is only so big. If we conclude that simply incurring ordinary expenses associated with raising adolescent children, such as band expenses, is sufficient to preclude a downward deviation, then it is difficult to conceive of a situation where a downward deviation would *ever* be appropriate. We do not believe this is the intent of the Guidelines. Furthermore, absent a downward deviation an obligor parent may have to cease increased visitation with his or her children due to the added financial burden associated with this increased visitation. In most circumstances, this result would not be in the best interest of the children and would conflict with public policy of encouraging non-residential parents to spend as much time as possible with their children. In light of the foregoing, we conclude the Trial Court erred when it concluded that it was in the best interest of the children to preclude a downward deviation in Father's child support obligation.

The Trial Court never actually decided whether Father was spending more time with the children than what is contemplated by the Guidelines. The Trial Court did determine that based on Father's monthly salary at the time of trial, his monthly child support payment should be $1,515.84. After oral argument before this Court, the parties stipulated that, if no downward deviation was appropriate, the Trial Court correctly applied the Guidelines in arriving at a monthly child support obligation of $1,515.84. Therefore, we remand this case to the Trial Court for a determination as to what extent Father's $1,515.84 monthly child support payment should be subject

to a downward deviation if Father carries his burden of showing he is spending more time with the children than is contemplated by the Guidelines.

The second issue on appeal is Father's claim that the Trial Court erred when it retroactively increased his child support obligation based on his then current earnings of $80,000, as opposed to averaging his earnings from the date the petition for modification was filed. When the Trial Court made the child support award based on $80,000 in gross wages retroactive to the date the petition to modify was filed, it essentially required Father to pay child support on a total of approximately $19,515.93 in gross wages that he never earned at his full-time job. If only Father's actual earnings from his full-time job were used when calculating retroactive child support back to the date the petition to modify was filed, then the total judgment against Father would be reduced by approximately $3,990, assuming Father is not entitled to a downward deviation which could reduce the judgment further. This, however, does not end our review of this issue.

The initial step in calculating an appropriate child support payment is to determine the obligor parent's gross income. The Guidelines define "gross income" to include "all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, . . . ." Tenn. Comp. R. & Regs. ch. 1240-2-4-.03(3)(a)(1).

If Father's gross income was limited solely to the wages from his full-time job, then we would be more likely to agree with Father's argument that the Trial Court should not have set the retroactive child support based on an annual income of $80,000 for that period of time when he undeniably was not earning a salary at that level. However, Father had other "gross income" in 2000 which was separate and apart from the wages he earned at his full-time job. In particular, Father received a pension and IRA distribution totaling $11,050 and had a capital gain of $65,100 from the sale of his house. In *Eldridge v. Eldridge*, No. W2000-00730-COA-R3-CV, 2002 Tenn. App. LEXIS 583 (Tenn. Ct. App. Aug. 8, 2002), *appl. perm appeal denied Mar. 10, 2003*, this Court noted the following with regard to capital gains from the sale of a house for purposes of determining child support payments:

> Both parties raise issues regarding the calculation of Husband's income. Wife contends that capital gains associated with the sale of the parties' Deerpath residence should be included when the court determines Husband's income for child support purposes. On his 1997 tax return, Husband reported a capital gain of $340,000 which represented the sale of the Deerpath residence. This capital gain should be included when the trial court calculates Husband's income for child support purposes.
>
> "Generally, capital gains are included in the definition of gross income." *Brooks v. Brooks*, 992 S.W.2d 403, 407 (Tenn. 1999)

(citing Tenn. Comp. R. & Reg. ch. 1240-2-4-.03(3)(a)). In *Smith v. Smith*, No. 01-A-01-9705-CH-00216, 1997 Tenn. App. LEXIS 733, at \*6-8 (Tenn. Ct. App. Oct. 29, 1997) (no perm. app. filed), we held that the trial court should have considered a one time capital gain when determining the obligor's income. In our decision, we distinguished *Hall v. Hall*, No. 03A01-9701-GS-00030, 1997 Tenn. App. LEXIS 501 (Tenn. Ct. App. July 21, 1997) (no perm. app. filed). In *Hall*, we did not include an isolated capital gain when calculating Husband's gross income. 1997 Tenn. App. LEXIS 501 at \*7. However, this was due to the fact that the capital gain was included in the marital estate. *Id.; see also Smith*, 1997 Tenn. App. LEXIS 733, at \*8. In this case, the evidence fails to establish that the $340,000 capital gain was included in the marital estate. Accordingly, the trial court shall consider the $ 340,000 capital gain when determining Husband's income for child support purposes.

*Eldridge*, 2002 Tenn. App. LEXIS 583, at \*\* 51-53.

The precise issue for resolution is whether the Trial Court erred when it concluded Father's retroactive child support for the thirty-three month period from the date the petition to modify was filed up until the date of trial should be based on Husband's annual gross income being $80,000. Father's average annual gross income, including his pension and IRA distribution as well as his capital gains, during the time period in question is at least as much as the $80,000 used by the Trial Court. Because of Father's additional income in 2000, we conclude the Trial Court made no error as claimed by Father in its decision to base Father's retroactive child support on an $80,000 annual gross income. In so doing, we note that Mother does not claim on appeal that the retroactive support should have been higher than what was set by the Trial Court. Notwithstanding the foregoing, because the resolution on remand of the issue of whether Father is entitled to a downward deviation may impact the amount of retroactive child support he owes, we vacate the amount of that judgment and remand this issue as to the amount of the retroactive child support to the Trial Court as well. In all other respects, the judgment of the Trial Court is affirmed.

### Conclusion

The judgment of the Trial Court is affirmed in part and vacated in part, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion and for collection of the costs below. Costs on appeal are assessed one-half against the Appellant Dana Bryan Ellis and his surety, and one-half against the Appellee Susan Lynn Ellis (Johnson).

_____
D. MICHAEL SWINEY, JUDGE