# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**February 1, 2000**

**Cecil Crowson, Jr.
Appellate Court Clerk**

STATE OF TENNESSEE )
o/b/o CAROL A. VAUGHN, )
 )
   Plaintiff/Appellee, ) Montgomery Juvenile
 ) No. 77-129
VS. )
 ) Appeal No.
PETER KAATRUDE, ) M1997-00146-COA-R3-CV
 )
   Defendant/Appellant. )

APPEAL FROM THE JUVENILE COURT FOR MONTGOMERY COUNTY
AT CLARKSVILLE, TENNESSEE

THE HONORABLE CHARLES E. BUSH, JUDGE

For Plaintiff/Appellee:

Paul G. Summers
Attorney General and Reporter

Douglas Earl Dimond
Assistant Attorney General

For Defendant/Appellant:

Gregory D. Smith
Clarksville, Tennessee

## AFFIRMED IN PART; VACATED IN PART; AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves a father's obligation to pay support for a non-marital child. Fifteen years after the child's birth, the Tennessee Department of Human Services, acting on behalf of the child's mother, filed suit in the Montgomery County Juvenile Court seeking to establish paternity and to obtain past and future support from the father. Following a bench trial, the trial court entered an order establishing paternity and ordering the father to pay $542.50 per month in child support. The juvenile court also awarded the mother $50,000 in back child support. The father now takes issue with the amount of the award for back child support. We have concluded that the evidence does not support the amount of the award for back child support and accordingly remand the case for further proceedings.

## I.

The brief liaison between Carol Vaughn and Peter Kaatrude came to an end in October 1980. Ms. Vaughn learned that she was pregnant several months later. While the parties' accounts differ concerning the events immediately following this discovery,[1] there is no dispute that Ms. Vaughn gave birth to a son on August 7, 1981. On advice of counsel, Ms. Vaughn did not list Mr. Kaatrude as the child's father on the birth certificate and had no contact of any sort with Mr. Kaatrude after the child's birth.[2]

Ms. Vaughn undertook to raise the child without any assistance from Mr. Kaatrude, and thus Mr. Kaatrude played no role in the boy's life. Mr. Kaatrude completed his undergraduate education in Nashville and in 1982 obtained a graduate degree in library science. After working in Nashville for several years, Mr. Kaatrude became an assistant librarian at Louisiana State University. In 1992, after stints at UCLA's Graduate School of Management and Nicholls State University, Mr. Kaatrude became the Dean of Library Services at Lamar University in Port Arthur, Texas.

In 1992, perhaps as a result of seeking AFDC benefits from the Tennessee Department of Human Services, Ms. Vaughn learned that she had a legal right to seek child support from her son's father. By that time, she had lost track of Mr. Kaatrude even though she had apparently maintained some sort of contact over with years with his father. Nevertheless, Ms. Vaughn still made no effort to seek support from Mr. Kaatrude. However, in March 1996, the Office of Child Support of the Department of Human Services learned of Mr. Kaatrude's whereabouts from his father who resided in Nashville. Armed with this information, the Department filed a petition in the Montgomery County Juvenile Court seeking an adjudication of Mr. Kaatrude's paternity as well as past and future child support.

---

[1]Ms. Vaughn asserts that she discussed her pregnancy with Mr. Kaatrude and that he suggested that she have an abortion. Mr. Kaatrude disputes that this conversation ever occurred and insists that he would never have proposed an abortion because he opposes abortion for "religious and personal reasons."

[2]Ms. Vaughn stated that she had been advised that distancing herself and the child from Mr. Kaatrude would enhance the prospects of the child's adoption should she later marry.

Mr. Kaatrude did not agree initially that he was the child's father because he and Ms. Vaughn had engaged in protected sex and because the child's birth occurred more than nine months after he and Ms. Vaughn broke up. When the court-ordered blood tests confirmed that he was the father, Mr. Kaatrude informed the Department that he was willing to pay child support prospectively but that it would be unreasonable to require him to pay back child support because of both Ms. Vaughn's delay in demanding support and her purposeful decision to raise the child without his assistance.

Following a hearing, the juvenile court found that Mr. Kaatrude was the child's father and directed him to begin paying $542.50 per month in child support. In addition, the trial court awarded Ms. Vaughn $50,000 for back child support from August 1981 to January 1997 but permitted Mr. Kaatrude to pay this portion of the judgment in installments of $100 per month.[3] The juvenile court also determined that these support obligations would be paid by wage assignment. Mr. Kaatrude has appealed from the $50,000 award for back child support.

## II.

Biological parents must, as a general matter, support their children until they reach the age of majority. *See* Tenn. Code Ann. § 34-11-102(a), (b) (1996); *Smith v. Gore*, 728 S.W.2d 738, 750 (Tenn. 1987). Their support obligations are joint and several, and the extent of their obligation depends on their ability to provide support. When necessary, the courts may apportion the responsibility for support between the parents according to their respective abilities to provide support. *See State ex rel. Grant v. Prograis*, 979 S.W.2d 594, 601 (Tenn. Ct. App. 1997); *Gotwald v. Gotwald*, 768 S.W.2d 689, 698 (Tenn. Ct. App. 1988).

A father's beliefs concerning his responsibility for a child are irrelevant in cases of this sort. It is neither uncommon nor unexpected for a father to be disinclined to support a child he believes is not his. However, once paternity is established, the obligation to provide support exists notwithstanding the father's belief that the child is not his or the fact that, either by choice or by circumstance, he has not been a part of the child's life. *See, e.g., Rutledge v. Barrett*, 802 S.W.2d 604, 607 (Tenn. 1991) (holding that a custodial parent's conduct cannot extinguish a non-custodial parent's support responsibility); *Cline v. Cline*, 37 Tenn. App. 696, 699-700, 270 S.W.2d 499, 501 (1954) (awarding child support even though the father had deserted his family).

Once a trial court determines that a man is a child's biological father, it must address not only the child's need for future support but also the father's obligation of past support.

---

[3]At this rate, it will take Mr. Kaatrude over forty years to retire his obligation for back child support.

*See* Tenn. Code Ann. § 36-2-108(b) (repealed 1997).[4] In appropriate circumstances, the court may require the father to pay back child support from the date of the child's birth. *See State ex rel. Coleman v. Clay*, 805 S.W.2d 752, 755 (Tenn. 1991). Awards for back child support may be thought of as "a form of reimbursement for the . . . [mother's] assumption of the entire duty during the period covered by the arrearages." *Hoyle v. Wilson*, 746 S.W.2d 665, 677 (Tenn. 1988).

In this case the juvenile court acted within its discretion in ordering Mr. Kaatrude to pay child support going back to his son's birth. The record, such as it is, contains no evidence that anyone other than Ms. Vaughn provided support for the child since his birth. Part of Ms. Vaughn's resources may have come through AFDC benefits, but even this is not clear in the present record. Mr. Kaatrude's duty to provide support existed during all those years, and lack of his financial assistance during that time either required Ms. Vaughn to shoulder more than her share of the support responsibility or, more likely, caused the child to get by with less. An award of back child support fills this gap.

## III.

Having found that the juvenile court properly determined that Mr. Kaatrude should pay back child support, we turn to the question of the proper amount of the support. Setting child support is a discretionary matter. *See State ex rel. Coleman v. Clay*, 805 S.W.2d at 755. Accordingly, we review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed). While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

The goal of the statutes and regulations governing child support is to assure that children receive support reasonably consistent with their parent or parents' financial resources. *See Shell v. Law*, No. 03A01-9608-CV-00251, 1997 WL 119581, at *4 (Tenn. Ct. App. Mar. 18, 1997), *perm. app. dismissed* (Tenn. Jan. 29, 1998). The statutes and regulations promote this goal by requiring the courts to set child support using guidelines developed by the Tennessee Department of Human Services to promote both efficient child

---

[4]In 1997, the Tennessee General Assembly replaced the separate causes of action for paternity and legitimation with a single cause of action to establish paternity other than by adoption. *See* Tenn. Code Ann. §§ 36-2-301, - 322 (Supp. 1999). This Act did not take effect until July 1, 1997 and, therefore, does not affect the rights of the parties in this case. *See* Tenn. Code Ann. § 1-3-101 (1994).

support proceedings and dependable, consistent child support awards. *See* Tenn. Code Ann. § 36-5-101(e) (Supp. 1999); Tenn. Comp. R. & Regs. r. 1240-2-4-.02(2)(b), (c) (1994).

The child support guidelines require a noncustodial parent to pay an amount of child support based on the noncustodial parent's net income and the number of children to be supported. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(5) (1994). They draw no distinction between children whose parents are or were married and those whose parents were never married. Thus, as we have held previously, the guidelines apply not only in divorce cases but also in proceedings in which one unmarried parent is seeking child support from the other. *See Shell v. Law*, 1997 WL 119581, at *2; *Barabas v. Rogers*, 868 S.W.2d 283, 288 n.5 (Tenn. Ct. App. 1993); *Faircloth v. Locke*, No. 01A01-9010-GS-00376, 1991 WL 259478, at *3 (Tenn. Ct. App. Dec. 11, 1991) (No Tenn. R. App. P. 11 application filed).

For the purpose of setting child support, a noncustodial parent's net income is generally established by introducing pay stubs, personal tax returns, or other credible records evidencing income. *See Kirchner v. Pritchett*, No. 01A01-9503-JV-00092, 1995 WL 714279, at *2 (Tenn. Ct. App. Dec. 6, 1995) (No Tenn. R. App. P. 11 application filed). No such evidence regarding Mr. Kaatrude's earning history between 1981 and 1996 is in this record. What little evidence we have on this pivotal matter comes from the parties' joint summary of the evidence which merely states that Mr. Kaatrude "indicated that his salary was approximately $31,000 for the last three years . . .. [And] that from 1980-1985, [he] had a 'hand to mouth' existence as . . . a full time college student. From 1985-1992, [he] had considerable travel and jobs paying salaries in the low $20,000's."

Based on this evidence, it is obvious that the juvenile court did not employ the child support guidelines when it determined that Mr. Kaatrude should pay Ms. Vaughn $50,000 in back child support.[5] This figure is a round number, arbitrarily chosen, that cannot be correlated to any evidence in the record or to any calculation envisioned by the child support guidelines. As far as we have been able to determine, the $50,000 back child support award bears no traceable relation to Mr. Kaatrude's actual ability to support his son from 1981 to 1996. We have no choice other than to find that the juvenile court's decision to order Mr. Kaatrude to pay $50,000 in back child support was arbitrary because it lacks any evidence to support it. Accordingly, we vacate the $50,000 back support award.

## IV.

We concluded earlier that the juvenile court correctly determined that Mr. Kaatrude should be required to pay back child support in some appropriate amount. Thus, vacating the original award for back child support cannot end the matter. Even though the present

---

[5]Awards for back child support may, but are not required to, be based on the child support guidelines. *See State v. Springs*, 976 S.W.2d 654, 656 (Tenn. Ct. App. 1997). Because the amount of back support in this case rests almost exclusively on Mr. Kaatrude's ability to pay support, using the guidelines is appropriate in this case.

record is insufficient for setting the back child support, we can cure this shortcoming by remanding the case for further proceedings.

This court has the statutory power to remand cases when we determine that complete justice cannot be done on appeal and when the record indicates that more satisfactory evidence can be presented which will enable the trial court to render a more just decision. *See* Tenn. Code Ann. § 27-3-128 (1980); *Haury and Smith Realty Co. v. Piccadilly Partners I*, 802 S.W.2d 612, 616 (Tenn. Ct. App. 1990). This case fits these criteria for three reasons. First, the record does not enable us to calculate the amount of Mr. Kaatrude's back child support based on the child support guidelines. Second, it should be a relatively easy matter for Mr. Kaatrude to present evidence regarding his salary history that will facilitate calculating his net income for the purpose of applying the guidelines. Third, Mr. Kaatrude should not be permitted to sidestep his support obligation because of shortcomings in the appellate record.

Accordingly, we remand the case to the juvenile court to calculate Mr. Kaatrude's back child support obligation using the child support guidelines. On remand, the parties should be permitted to present evidence concerning Mr. Kaatrude's earnings between 1981 and 1996. Based on this evidence, the juvenile court should then determine Mr. Kaatrude's back child support obligation for each year based on the guideline percentage applicable to that particular year.[6] In addition to this support, the trial court may also make an additional award to Ms. Vaughn for part or all of the medical expenses she incurred in 1981 when she gave birth to the parties' child. However, in order to recover these expenses, Ms. Vaughn must present competent proof concerning what these expenses were and that they were not paid by any other person.

One final point regarding the payment of the judgment for back support should be made. The award for back support is intended either to benefit the parties' child or to reimburse Ms. Vaughn for contributing more than her fair share to her son's support. In the absence of proof to the contrary, the award of back child support should be made to Ms. Vaughn, subject only to whatever subrogation rights the State may have under the Title IV-D program. However, if Mr. Kaatrude presents proof demonstrating that Ms. Vaughn did not provide the child with more support than she would have otherwise been required to provide, then the juvenile court should place appropriate restrictions on the use of the funds to ensure that they are used only for the child's direct benefit.

---

[6]Because the child support guidelines did not become effective until 1988, Mr. Kaatrude's child support obligation from 1981 through 1987 should be calculated using the formula in the original 1988 guidelines. *See Townsend v. Thompson*, No. 02A01-9211-JV-00321, 1993 WL 512538, at *2 (Tenn. Ct. App. Dec. 10, 1993) (No Tenn. R. App. P. 11 application filed). Mr. Kaatrude's child support obligation from 1988 through 1996 should be calculated using the guidelines in force for the year in which the support is being calculated. In the years when the guidelines were amended, Mr. Kaatrude's support should be calculated based on the guidelines in effect at the beginning of the year.

# V.

We affirm the determination that Mr. Kaatrude should pay back child support but vacate the $50,000 back child support award and remand the case to the juvenile court to set the amount of Mr. Kaatrude's back child support obligation consistent with this opinion. We tax the costs of this appeal in equal proportions to Peter Kaatrude and his surety and the State of Tennessee for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:


_____
HENRY F. TODD,
PRESIDING JUDGE , M.S.


_____
BEN H. CANTRELL, JUDGE