IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2004 Session

**KENNETH MORGAN JOHNSON v.**
**DOROTHY LYNN JOHNSON (HOLT)**

**Appeal from the Chancery Court for Coffee County**
**No. 98-4      John W. Rollins, Judge**

_____

**No. M2003-00866-COA-R3-CV - Filed October 1, 2004**

_____

Kenneth Morgan Johnson ("Father") and Dorothy Lynn Johnson ("Mother") were divorced in 1998. The parties have two minor children and initially agreed to equal co-parenting time and that neither party would seek child support from the other. A house owned by Father was severely damaged if not destroyed by fire, and the proceeds from a fire insurance policy were deposited with the Trial Court in a separate lawsuit. After Father was sentenced to be incarcerated for seven years for federal drug violations, Mother filed a petition claiming entitlement to the insurance funds being held by the Trial Court because the minor children were in need of support. The Trial Court concluded Mother should be paid $1,034 per month out of the fire insurance proceeds as child support for the parties' two minor children. Father appeals claiming the Trial Court erred in determining the amount of child support he should be required to pay each month out of the fire insurance proceeds. We affirm the decision of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., joined, and CHARLES D. SUSANO, JR., J., filed a separate concurring opinion.

Roger J. Bean and John R. LaBar, Tullahoma, Tennessee, for the Appellant Kenneth Morgan Johnson.

Gerald L. Ewell, Jr., Tullahoma, Tennessee, for the Appellee Dorothy Lynn Johnson (Holt).

# OPINION

## Background

The parties were married on August 17, 1990, and have two children who are currently nine and thirteen years old. Father filed for divorce in January of 1998. Approximately two months later, a Final Decree was entered granting the parties a divorce based upon the stipulated grounds of irreconcilable differences. In the Marital Dissolution Agreement, which was approved by the Trial Court, the parties agreed to joint custody of their two minor children with equal co-parenting time. The Marital Dissolution Agreement further provided that "[s]ince the parties will have joint custody and each parent will have the children every other week, neither party seeks child support from the other."

In January of 2002, Mother filed a Petition to Modify and for Contempt.[1] In this petition, Mother claimed Father was using illegal drugs, had been fired from his job after failing a drug test, and that she believed Father "may be supporting himself through the sale or distribution of drugs." Mother also maintained that Father was having an "inappropriate relationship" with an underage female who was spending the night with Father in the presence of the children. Mother requested, among other things, to be designated the primary residential parent for their two minor children and that the Trial Court enter a temporary restraining order prohibiting Father from taking the children out of the state or otherwise interfering with her custody and control of their children. The Trial Court entered a temporary restraining order prohibiting Father from interfering with Mother's custody and control of their children. Father responded to the petition, generally denied the pertinent allegations contained therein, and moved to quash the temporary restraining order.

On February 5, 2002, the Trial Court conducted a hearing on several issues, including whether a temporary injunction should be issued. At the hearing, Father was questioned about his employment history as well as his use of illegal drugs. Father admitted to using drugs in the past and contracting Hepatitis C from intravenous drug use. According to Father, he began working for Nissan in October of 1991. In 1993, Father was convicted of felony possession of cocaine and sentenced to sixty days in jail. Father informed Nissan that he needed a sixty day leave of absence, but he lied to Nissan about the reason he needed to be absent from work for such an extended period of time. Father's request for a leave of absence was approved. Father then returned to work at Nissan after serving sixty days in jail. Father testified that by early 2000, he was drug-free except for one instance when he took "three hits off of one joint with another fellow Nissan employee…." As luck would have it, two weeks later Nissan required Father to undergo a drug test, and he tested positive for marijuana. Father realized his employment with Nissan was in jeopardy. According to Father:

---

[1] This was Mother's second petition seeking to modify the custody arrangement initially agreed to when the parties were divorced. The first petition was filed in 1999 and was denied after the Trial Court concluded Mother had failed to prove a sufficient "change of circumstances to justify a modification of the original custody order …."

I lied on my application [for employment] and said I wasn't … a felon.[2] When we left this courtroom last November, within two months, [Nissan] asked me to sign a release of my background. In 1993, I lied to them to get a 60-day leave of absence ….

After Father failed the drug-test, Nissan informed him that he would have to complete a thirty day drug rehabilitation program if he wanted to remain employed with Nissan. Father testified that because he believed Mother would attempt to seek full custody of their children if she found out he was in a drug rehabilitation program, he chose to voluntarily resign his employment with Nissan. After quitting Nissan, Father worked for two years in the dry wall business and also repaired small engines. Father described himself as a "handyman." According to Father, he was unable to continue working in the dry wall business due to medical problems with one of his hands. On the day of the hearing, Father was set to begin a new job as a truck driver earning $9.50 per hour.

At the February 5th hearing, Father specifically denied having any current involvement with illegal drugs. Father was arrested the following week for violations of federal drug laws. When Mother learned Father was in jail, she filed a motion to amend her petition to modify custody and brought Father's incarceration to the Trial Court's attention. A hearing on Mother's petition to modify was conducted in April while Father was held in jail without bail after being indicted under federal law for conspiracy to sell fifty or more grams of methamphetamine.[3] Not surprisingly, the Trial Court concluded that a material change in circumstances had occurred and designated Mother as the primary residential parent of the two minor children. Since Father was in jail, the matter of child support was stayed pending further orders of the court.

Prior to the February 5th hearing, a house owned by Father suffered extensive fire damage. The insurance company still was investigating the fire at the time of the hearing. A lawsuit regarding the fire insurance proceeds eventually was filed and was pending in the same court as the present custody matter. The proceeds from the fire insurance policy eventually were deposited with the Trial Court. In January of 2003, Mother filed a Petition to Establish Child Support. Mother claimed she was entitled to the funds being held by the Trial Court because the minor children were in need of support. In addition to Mother's claim for child support, it appears there were at least two other claims being made against the fire insurance proceeds. The record is unclear exactly how much money was remaining after these other claims were satisfied, although it appears there is in excess of $70,000.

A hearing was held on Mother's Petition to Establish Child Support and, while Father was not present because he was in the federal penitentiary, he was represented by counsel. After the

---

[2] Father had a felony conviction from 1978 for involuntary manslaughter.

[3] Father was held without bail after a United States Magistrate Judge concluded Father was a danger to the community and a flight risk.

hearing the Trial Court entered an Order requiring Father to pay child support. As relevant to this appeal, the Trial Court stated:

> [Based upon Father's] own testimony at the last hearing, February 5, 2002 and in his deposition, [Father's] after tax earnings were $788.80 per week on November 1, 1999 and that [Father] earned over $100,000 for the two years next preceding February 4, 2002.…
>
> The Court thus finds [Father's] earning ability for the three years next preceding his incarceration was $51,733.33 or $4,311.00 per month. This computes to a child support obligation of $1,034.00 per month.

Father appeals, claiming only that the Trial Court erred when it concluded his monthly child support payment should be based on the average of his earnings for the three years immediately preceding the February 5, 2002, hearing. According to Father, his child support payment should be based on wages of $9.50 per hour, which is how much he was earning at the truck driving job he started on the day of the hearing and worked for approximately one week before being arrested. If Father is correct, his child support payment would be reduced to approximately $435 per month. While the parties disagree on the amount of the monthly payments to which Mother is entitled, they are in agreement that the remaining fire insurance proceeds held by the Court should be used to satisfy Father's monthly child support obligation.

**Discussion**

In *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244 (Tenn. Ct. App. 2000), this Court acknowledged the Trial Court's discretion in setting the appropriate amount of child support payments, stating:

> Having found that the juvenile court properly determined that Mr. Kaatrude should pay back child support, we turn to the question of the proper amount of the support. Setting child support is a discretionary matter. *See State ex rel. Coleman v. Clay*, 805 S.W.2d at 755. Accordingly, we review child support decisions using the deferential "abuse of discretion" standard of review. This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.*, No. 87-136- II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed). While we will set aside a discretionary decision if it rests on an

-4-

inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative.

The goal of the statutes and regulations governing child support is to assure that children receive support reasonably consistent with their parent or parents' financial resources. *See Shell v. Law*, No. 03 A01-9608-CV-00251, 1997 WL 119581, at *4 (Tenn. Ct. App. March 18, 1997), *perm. app. dismissed* (Tenn. Jan. 29, 1998). The statutes and regulations promote this goal by requiring the courts to set child support using guidelines developed by the Tennessee Department of Human Services to promote both efficient child support proceedings and dependable, consistent child support awards. *See* Tenn. Code Ann. § 36-5-101(e) (Supp. 1999); Tenn. Comp. R. & Regs. r. 1240-2-4-.02(2)(b), (c) (1994).

*Kaatrude*, 21 S.W.3d at 248-49.

At the hearing to establish Father's child support payments, the parties and the Trial Court discussed the impact of the decision in *Coates v. Coates*, No. M2001-01928-COA-R3-CV, 2002 Tenn. App. LEXIS 803 (Tenn. Ct. App. Nov. 15, 2002), *no appl. perm. appeal filed*, a recent unreported opinion from the Middle Section of this Court. In *Coates*, when the parties were divorced the father was serving a 200 month sentence in federal prison for drug trafficking. The father was earning $5.00 per month while in prison. The trial court determined the father's child support obligation should be based on an annual income of $80,000, which was his average annual income for the three years preceding his incarceration. Using the child support guidelines, the trial court concluded that the father's monthly child support payment should be $1,497. 2002 Tenn. App. LEXIS 803, at *2. The trial court also determined that the marital residence should be sold, with one-half of the proceeds going directly to the mother, and the remaining one-half to be placed in a trust account for payment of the father's monthly child support obligation. The trial court then held that if the funds in the account were insufficient to pay the child support throughout the minority of the younger child, the father's child support obligation would, nevertheless, continue to accrue. 2002 Tenn. App. LEXIS 803, at ** 2, 3. After the trial court's judgment became final, the father filed a petition for reduction on his child support payments, which the trial court denied. *Id*., at *3.

On appeal, the judgment of the trial court was reversed in part and affirmed in part. This Court discussed the standard to be applied when determining if a current child support order should be modified. After discussing the applicable standard, this Court concluded that the father in *Coates* had established he was entitled to a reduction in his child support, stating it was clear that the "difference between the amount which would be due under the guidelines based on Father's current monthly income of $5.00 and the amount of current support under the court's original order is more than 15%." 2002 Tenn. App. LEXIS 803, at *5. This Court then addressed the trial court's apparent conclusion that, even though the father was earning only $5.00 per month while in jail, he

still should be required to pay $1,497 per month in child support because he was willfully and voluntarily unemployed as a result of the conduct which lead to his incarceration. We rejected this conclusion by the trial court, stating as follows:

> The [trial] court's language mirrors that of the guidelines provision which allows the setting of support based upon potential income where an obligor is willfully and voluntarily unemployed or underemployed. Tenn. Comp. R. & Regs., ch. 1240-2-4-.03(3)(d).
>
> However, willful and voluntary unemployment or underemployment must result from an intent to reduce or terminate income. *Wilson v. Wilson*, 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000). This court has rejected the proposition that a parent's dishonest acts which lead to unemployment constitute willful and voluntary unemployment. *Id.* As a logical extension of that principle, we have also held that unemployment or underemployment resulting from incarceration is not willful and voluntary. *Pennington v. Pennington*, No. W2000-00568-COA-R3-CV, 2001 Tenn. App. LEXIS 193, at *13 (Tenn. Ct. App. Mar. 14, 2001) (no Tenn. R. App. P. 11 application filed).
>
> Consequently, we conclude that Father has demonstrated a significant variance under Tenn. Code Ann. § 36-5-101(a)(1) and was entitled to a reduction in his child support obligation.

*Coates*, 2002 Tenn. App. LEXIS 803, at ** 6, 7.

In light of the foregoing, we concluded that since the father was entitled to a reduction in his child support obligation, arrearages could not accrue based on his inability to pay due to his incarceration. However, we went on to add that this did not mean the trial court's order that the father's one-half of the net proceeds from the sale of the marital residence could be used to support the children was error. This was so because the trial court had authority to enter an order for the support of the children via property owned by the father. *See* Tenn. Code Ann. § 36-5-101(a)(1). We then stated:

> We interpret the trial court's order as awarding Father's interest in half the proceeds from the sale of the marital residence as child support. Knowing Father was not available for gainful employment and would remain incapable of earning more than a nominal salary for the duration of his sentence, the trial court awarded child support out of Father's property, in accordance with Tenn. Code Ann. § 36-5-101(a)(1). The fact that the court ordered regular

payments from the fund established with the proceeds does not alter the fundamental nature of the order.

Based upon the foregoing analysis, we affirm the trial court's denial of a reduction in support with regard to that portion of the trial court's order awarding Father's half of the proceeds from the sale of the house as child support. We reverse the trial court's order denying a prospective reduction based upon Father's actual income and remand for a determination of his obligation, if any, based upon that current income.

2002 Tenn. App. LEXIS 803, at * *8, 9.

In reliance on the *Coates* opinion and the relevant statute, the parties here agreed at the trial court level and on this appeal that the funds being held by the Trial Court constituted property of Father that could be used to support his two children. Mother does not claim that Father's child support obligation will continue to accrue if the remaining fire insurance proceeds are exhausted.[4] Likewise, Mother does not argue that Father is willfully and voluntarily unemployed as a result of his actions leading to his incarceration. As stated previously, the sole issue presented by Father is whether the Trial Court erred when it determined the amount of his monthly child support payment should be $1,034.

The Court in *Coates* correctly observed that typically, "[t]he appropriate amount of support is determined by applying a flat percentage, based on the number of children to be supported, to the obligor parent's net income. Tenn. Comp. R. & Reg., ch. 1240-2-4-.03(5)." *Coates*, 2002 Tenn. App. LEXIS 803, at * 5. In their briefs, the parties devote most of their argument to whether or not Father was voluntarily underemployed when he accepted employment as a truck driver earning $9.50 per hour. Along this line, we note that Father's truck driving job only required him to work 36 hours per week, although he was paid for 40 hours of work. Thus, he had some additional time each week to perform "handyman" work on the side, and in fact admitted at the hearing that he was continuing to repair small engines. There is ample proof in the record to conclude that Father's income was not limited to the $9.50 per hour he was making as a truck driver. In any event, we are reluctant to hold that Father's earning potential was defined solely by wages earned at a job which he held for only one week before being arrested.

Father is incarcerated and presumably now has very little income. His child support is being paid from property held by the Trial Court. Because his monthly child support payment is not being made from any "income", an argument could be made that his child support obligation need not be intertwined with the guidelines which seem to focus on child support derived from income. However, we need not and do not reach this issue for two reasons. First, even if the guidelines require a trial court to base child support being paid from property solely on a flat

---

[4] Of course, this assumes Father has no meaningful income and has not been released from prison.

percentage of the obligor parent's income or potential income, a trial court nevertheless must deviate upward in certain circumstances. As relevant to this case, the guidelines provide that the amount of child support "shall" be increased when the obligor is not providing health insurance for the children and when the obligor parent is not exercising the minimum amount of visitation contemplated by the guidelines. *See* Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(a) and (b). Accordingly, even if the Trial Court should have based Father's child support payment solely on his hourly earnings of $9.50 as argued by Father, the Trial Court would have been required to increase that payment after taking both of these factors into account. Second, even if the Trial Court was not required to determine Father's monthly earning capacity and then apply the flat percentage, we nevertheless are unable to conclude that the Trial Court abused its discretion by doing so. Given the facts and circumstances of this case, we find no abuse of discretion by the Trial Court in setting Father's child support payment at $1,034 per month to be paid from the fire insurance proceeds held by the Trial Court.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed to the Appellant, Kenneth Morgan Johnson, and his surety.

_____
D. MICHAEL SWINEY, JUDGE