IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 15, 2005 Session

## RICKY GENE CAMPBELL v. WANDA SUZANNE CAMPBELL

**An Appeal from the Chancery Court for Fayette County**
**No. 13161PP     Dewey C. Whitenton, Chancellor**

---

**No. W2004-01608-COA-R3-CV - Filed July 25, 2005**

---

This is a child custody dispute involving the appointment of a guardian ad litem. The parties agreed to the appointment of a guardian ad litem. After an investigation, the guardian ad litem recommended that primary custody be awarded to the father. The mother filed a motion to remove the guardian ad litem. The trial court did not do so. After a bench trial, the father was designated the primary residential parent. The mother asserts that the guardian ad litem appointed by the trial court appeared biased towards the father because the guardian ad litem knew the father's sister. The mother now appeals. We affirm, finding no abuse of discretion in the trial court's decision not to remove the guardian ad litem.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Barry J. McWhirter, for the appellant, Wanda Suzanne Campbell.

Steven C. Grubb, for the appellee, Ricky Gene Campbell.

### OPINION

Ricky Gene Campbell ("Father") and Wanda Suzanne Campbell ("Mother") were married for approximately seventeen years. The had one child, a son, Charles, born on January 28, 1992.

After Father petitioned for divorce, a dispute between the parties arose over custody of their son. Prior to the trial, the parties agreed to the appointment of a guardian ad litem for the parties' son. The trial court appointed William Rhea ("Rhea") to serve as guardian ad litem.

During the marriage, the family lived in a rural setting in Fayette County, Tennessee. After the parties separated, Mother moved to Shelby County. Apparently, the parties initially had a parenting arrangement in which the son spent three days with one parent and three days with the

other parent, while continuing to attend school in Fayette County. To accommodate the son's desire for less travel time and more stability, the schedule was changed prior to trial, to have Charles spend weekdays with Father in Fayette County and weekends with Mother. The guardian ad litem issued his report to the trial court in November 2002, apparently recommending that Charles spend most of his residential time with Father in Fayette County.[1]

On October 10, 2003, Mother filed a motion asking the trial court to remove Rhea as the guardian ad litem. In the motion, Mother alleged that she had just discovered that Rhea was "an old family friend" of Father's sister, Charlene Byars ("Byars"). The record does not include a ruling on the motion at that time, but Rhea was not removed as guardian ad litem.

On February 20, 2004, a bench trial was held. The trial court heard testimony from both parties, Rhea as guardian ad litem, and finally testimony from Charles.

At trial, Rhea testified that he recommended that the son reside with Father during the school week and with Mother on the weekends. Rhea explained that he had met privately with Charles a number of times, and that Charles' desires were consistent. He loved both of his parents, but wanted to remain primarily in Fayette County, where he was comfortable in school and had numerous friends. Rhea said that Charles "definitely expressed to me the fact that he liked this new more consistent schedule [spending weekdays at Father's home] better than the three-day-on and three-day-off, I think was just wearing him out." Rhea also noted that Father had family support in Fayette County, in particular from Father's sister, Byars, who lived very close to Father. When asked about Byars, Rhea stated that "Ms. Byars a contemporary of my parents. . . . She's a very sweet lady. I don't know her that well. . . . I just know of her and know of her husband. But I do know of her and know her reputation as excellent."

Charles' testimony was consistent with Rhea's description of Charles' preferences. He said that he loved both of his parents, but that he wanted to be primarily in Fayette County and wanted to stay in school in Fayette County. He said that, on some weekends, he wanted to be able to visit with his friends in Fayette County. He asked the trial judge to implement a schedule in which he resided with Mother in Shelby County every other weekend, with the balance of the time with Father in Fayette County.

After hearing all of the testimony, the trial court declared the parties divorced and adopted a parenting plan consistent with Rhea's recommendation, designating Father as primary residential parent with the parties' son residing with Mother three weekends out of four. On May 20, 2004, the trial court entered a final decree of divorce incorporating the parenting plan. On June 25, 2004, Mother filed her notice of appeal. On November 19, 2004, the trial court entered a written order denying Mother's motion to remove the guardian ad litem, and making the order effective *nunc pro tunc* to November 2003. Mother now appeals.

---

[1]The report of the guardian ad litem is not included in the appellate record.

On appeal, Mother asserts that after Rhea was appointed guardian ad litem, Mother discovered "that Mr. Rhea's parents were friends with Father's sister, Charlene Byars." The guardian ad litem noted that the sister, Byars, provided family support for Father, and Mother argues that this indicates that the connection "compromised his ability to serve as an impartial guardian ad litem." Mother asserts that this Court should adopt an "appearance of impropriety" standard which would preclude the appointment of a guardian if the guardian's relationship with a related party would create the appearance of bias in favor of either parent. Mother maintains that the circumstances of this case create the appearance of impropriety because Rhea testified during the trial that his knowledge of Father's sister was a consideration in making his recommendation in the case.

Because this case was tried by the trial court sitting without a jury, we review the trial court's factual findings *de novo* accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); ***Campbell v. Fla. Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's legal conclusions are reviewed *de novo* without a presumption of correctness. ***Campbell***, 919 S.W.2d at 35.

Generally, the appointment of a guardian ad litem is a matter within the discretion of the trial court. In ***Gann v. Burton***, 511 S.W.2d 244 (Tenn. 1974), the Tennessee Supreme Court recognized that "the appointment of a guardian ad litem is within the sound discretion of the trial judge and requires the trial judge to appoint the guardian ad litem whenever justice requires. . . . and this Court will not overrule the trial judge's decision unless there is an abuse of discretion." ***Id.*** at 246-247. The removal of the guardian ad litem would fall within the trial court's discretion as well. ***In re Adoption of DPM***, E2002-02809-COA-R3-CV, 2003 WL 22415357, *2 (Tenn. Ct. App. Oct. 23, 2003). The abuse of discretion standard "requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." ***State ex rel. Vaughn v. Kaatrude***, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

In this case, assuming *arguendo* the application of the "appearance of impropriety" standard urged by Mother, the attenuated connection between the guardian ad litem and Father's sister creates no such appearance. The trial court's comments and ruling do not even allude to Father's sister. Moreover, the record contains ample evidence supporting the trial court's decision, even if no consideration is given to Father's family support. We find no error in the trial court's denial of Mother's motion to remove the guardian ad litem or in the trial court's designation of Father as primary custodial parent.

The decision of the trial court is affirmed. Costs are to be taxed to Appellant Wanda Suzanne Campbell, and her surety, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE