IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 23, 2014 Session

## STATE OF TENNESSEE EX REL. DAWN MOSS v. WILLIAM MOSS

**Appeal from the Chancery Court for Williamson County**
**No. 33311IVD1783023      Robbie T. Beal, Chancellor**

**No. M2013-00393-COA-R3-CV - Filed April 24, 2014**

In this post-divorce action, Mother and Father both sought to modify the child support obligation of Father. The trial court, *inter alia*, found that Father had an annual income of $65,000 and held that there had been a significant variance. The court raised Father's child support obligation to $233.00 per month, applied a downward deviation of $83.00, and ordered support to continue past age 21 for one of the children due to her disabilities. Father appeals, contending that the court erred in its calculation of his income. We affirm the method used to determine Father's income; we vacate the child support obligation and remand for a redetermination of the support amount.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, M. S., P. J., and ANDY D. BENNETT, J., joined.

Russ Heldman, Franklin, Tennessee, for the appellant, William Barry Moss.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Warren A. Jasper, for the appellee, State of Tennessee.

Jennifer Lynn Cole, Franklin, Tennessee, for the appellee, Dawn A. Moss.

### OPINION

### I. FACTS & PROCEDURAL HISTORY

Dawn Moss ("Mother") and William Moss ("Father") were divorced in 2008; three children were born of the marriage, two sons—William Colt , born April 30, 1993, and Lucas

Cord, born January 29, 1997—and one daughter—Dustyne Perry, born December 20, 1991—who is severely disabled. Father was designated primary residential parent and was ordered to pay $83 per month in child support.

On January 12, 2012, Father filed a motion which, *inter alia*, sought an order requiring [Mother] "to reimburse [Father] for overpayment of child support resulting from the emancipation of minor children and/or awarding him child support."[1] In response, the State of Tennessee, on behalf of Mother, requested that Father's motion be denied contending that Father "failed to submit a valid argument."[2]

On March 28 Mother filed a petition for modification of child support, contending that there had been "a significant variance between the Tennessee Child Support guidelines and the amount of child support currently ordered." Father filed an answer and counterclaim in which he admitted that the child support obligation should be modified, sought to modify his alimony obligation, and requested that he "be given credit for overpayment of child support."[3]

Mother's petition and Father's answer and counterclaim were heard on November 29, 2012. On January 7, 2013, the court entered an order finding that Father had the "ability to earn" $5,416.66 per month, that Mother had the "ability to earn" $1,666.66 per month, and that Colt was emancipated. The court held there was a significant variance and that a downward deviation from the presumptive child support obligation was warranted due to "economic hardship and child, Dustyne's, needs." Accordingly, the court raised Father's child support obligation to $233.00 per month but applied a downward deviation of $83.00; the court also ordered support to continue past age 21 for Dustyne due to her disabilities.[4] Father appeals.

---

[1] Father also sought repayment of interest he had been required to pay Mother with respect to a $250,000 judgment previously awarded in the 2008 divorce; Father later moved to strike this portion of his motion. The award of interest was the subject of a prior appeal which can be found at *Moss v. Moss*, No. M2010-01064-COA-R3-CV, 2011 WL 1459170 (Tenn. Ct. App. Apr. 15, 2011); the award of interest is not at issue in the present appeal.

[2] The State provided child support enforcement services to Mother pursuant to Title IV-D of the Social Security Act, 42 U.S.C. § 651 *et seq.*, and Tenn. Code Ann. § 71-3-124(c).

[3] Father's counterclaim included all issues raised in his January 12 motion with respect to child support.

[4] The order stated that the issue of alimony was not tried and was "expressly reserved."

## II. STANDARD OF REVIEW

The statutes and regulations on child support are intended to "assure that children receive support reasonably consistent with their parent or parents' financial resources." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 249; *see also* Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(e). Courts are therefore required to use child support guidelines developed by the Tennessee Department of Human Services "to promote both efficient child support proceedings and dependable, consistent child support awards." *Kaatrude*, 21 S.W.3d at 249; *see also* Tenn. Code Ann. § 36-5-101(e); Tenn. Comp. R. & Regs. 1240-02-04-.01(3)(b), (c).

Setting child support is a discretionary matter. *Kaatrude*, 21 S.W.3d at 248. Thus, we review the amount of a child support award to determine whether the trial court abused its discretion. *Id.* Under the abuse of discretion standard, we must consider "(1) whether the decision has a sufficient evidentiary foundation; (2) whether the trial court correctly identified and properly applied the appropriate legal principles; and (3) whether the decision is within the range of acceptable alternatives." *Id.*

## III. ANALYSIS

Father contends that the trial court "imputed" an annual income of $65,000 to him and that, because the court made no finding that he was willfully or voluntarily underemployed, this was error. We do not agree that the court imputed income to Father. Rather, consistent with the child support guidelines and applicable case law, the court properly averaged Father's income over a period of years as the starting point in the determination of his child support obligation.

In establishing Father's income, the court stated:

> I think the Court has to look at the general trends of his business. But with that being said farming income is just like any other type of business income that is somewhat [cyclical] in nature. You are going to have good years and you are going to have bad years. . . . [A]s long as that is his choice then the Court is going to some degree average out his income.
>
> The Court did that really last time for purposes of the divorce. The Court came up with a figure of 75 grand based upon the general productivity of the farm. If you take the last four years it averages out to be about 60. So the Court may have overestimated it just a touch, but on the same token that is how the Court deals with someone who owns especially a farm and to some degree any type of business that again is dependant on either economy or in this case nature. This is not the first farm case the Court has heard obviously

3

and the Court believes it is appropriate, again not necessarily to average it, but to use his – but to use his past earnings as the guide to what his earnings should be and what his earnings should be based on.

. . . The Court believes an estimation of $75,000 a year is an over estimation of what typical earnings should be or should be computed at. The Court believes in this case it is appropriate to drop those earnings only $10,000. I'm going to drop his ability to earn to $65,000 per year.

Again, that is a little more than the average, to very briefly explain that. Especially in the business of farming, a lot of expenses, a lot of what the Court would consider to be living expenses, are taken up by the farm. The mortgage on the home obviously, as well as the trucks he drives and such are all farm equipment or business deductions. So the Court again one more time is going to set his income at or his ability to earn at $65,000 a year.

The court's determination was based on an exhibit, entitled "Gross Earnings Exhibit for Defendant,"[5] which provided the following information regarding Father's income:

| 2012 | Gross Income from Farming | $ 373,116 |
|------|----------------------------|-----------|
| | Less Total Expenses from Farming | $ -479,503 |
| | Plus Depreciation on Farm Equipment | $ 108,000 |
| | **Income for [2012] less Depreciation Expense** | **$ 1,613** |
| | | |
| 2011 | Gross Income from Farming | $ 363,948 |
| | Less Total Expenses from Farming | $ -479,503 |
| | Plus Depreciation on Farm Equipment | $ 110,143 |
| | **Income for 2011 less Depreciation Expense** | **$ 5,412[6]** |
| 2010 | Gross Income from Farming | $ 408,172 |
| | Less Total Expenses from Farming | $ -394,405 |
| | Plus Depreciation on Farm Equipment | $ 113,497 |
| | **Income for 2010 less Depreciation Expense** | **$ 126,264[7]** |

[5] When moving to have this document admitted as an exhibit, counsel for Father stated that the parties had agreed prior to trial that Father's income should be calculated by taking his gross income from farming, subtracting his expenses, and adding back in depreciation on farm equipment. This document provided those figures and the calculation of Father's income from 2009 to 2012.

[6] It appears that there is a mathematical error in calculating Father's income for 2011. According to these figures, Father's income should be a negative $5,412.

[7] There is also a mathematical error in calculating Father's income for 2010. According to these figures, Father's income should be $127,264.

| 2009 | Gross Income from Farming | $ 436,688 |
| | Less Total Expenses from Farming | $ -444,106 |
| | Plus Depreciation on Farm Equipment | $ 117,838 |
| | **Income for 2009 less Depreciation Expense** | **$ 110,420** |

Father testified that this decline was due to extreme drought affecting the area.

In calculating child support obligations, this Court has held that current income may be established by averaging a parent's fluctuating income:

> The guidelines specifically allow averaging in determining gross income when establishing a prospective award: "[v]ariable income such as commissions, bonuses, overtime pay, and dividends, etc., should be averaged and added to the obligor's fixed salary." Tenn. Comp. R. and Regs. 1240-2-4-.03(3)(b).[8] Although that provision of the guidelines applies to variable components of income, the reasoning is just as applicable to situations where a parent is self-employed or whose total income is variable.
>
> * * *
>
> While our courts have approved or endorsed a two year period for purposes of averaging, *see, e.g.*, *Norton v. Norton*, No. W1999-02176-COA-R3-CV, 2000 WL 52819 at *7 (Tenn. Ct. App. Jan. 10, 2000) (no Tenn. R. App. P. 11 application filed), other time periods have also been used. *See, e.g.*, *Siegel v. Siegel*, No. 02A01-9708-CH-00198, 1999 WL 135090 at *6 (Tenn. Ct. App. March 5, 1999) (no Tenn. R. App. P. 11 application filed) ("Based on the entire record, it appears that Husband's earnings for the entire twelve months of 1996 best reflect his income and earning capacity for the purpose of determining child support and alimony."); *Alexander*, 34 S.W.3d at 460 (four years income averaged). The time period to be used lies within the discretion of the trial court based upon the facts of the situation.

*Smith v. Smith*, M2000-01094-COA-R3-CV, 2001 WL 459108, at *5–6 (Tenn. Ct. App. May 2, 2001).

Averaging Father's income over a four year period to determine his current income for child support purposes is authorized by Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(b)

---

[8] This provision is now found at Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(b)

5

and in so doing the court properly applied the appropriate the legal principles.[9] The court's analysis also accounted for the fact that Father's personal mortgage and vehicle expenses were inappropriately deducted as business expenses; this is specifically provided for by the Child Support Guidelines and is likewise appropriate.[10] The court did not abuse its discretion in the method used for setting Father's income.

As noted earlier, there is a miscalculation in the exhibit submitted by Father as evidence of his income[11]; when calculated correctly, Father's average income for the time period was $58,471.25, rather than $60,927.25. As a result of the miscalculation, the order setting support lacks sufficient evidentiary support.

## IV. CONCLUSION

For the reasons set forth above, we affirm the setting of Father's income at $65,000, vacate that portion of the order which sets Father's child support obligation, and remand for a redetermination of his obligation.

_____
RICHARD H. DINKINS, JUDGE

---

[9] In contrast, imputing income is authorized:

(I) If a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed; or
(II) When there is no reliable evidence of income; or
(III) When the parent owns substantial non-income producing assets, the court may impute income based upon a reasonable rate of return upon the assets.

Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)2(i). The court made no such findings here.

[10] The Child Support Guidelines provide that in calculating income for a self-employed parent, that "excessive car expenses or excessive personal expenses, or depreciation on equipment, the cost of operation of home offices, etc., shall not be considered reasonable expenses." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)3. Father testified that his mortgage payment for his farm and home was roughly $1,700 per month.

[11] See footnotes 8 and 9.