FILED
06/24/2020
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 1, 2019

## JENNIFER BLAIR DEMATTEO TURK v. MICHAEL JOSEPH TURK, JR.

**Appeal from the Circuit Court for Rutherford County**
**No. 73613    J. Mark Rogers, Judge**

_____

**No. M2019-00869-COA-R3-CV**

_____

This divorce action concerns the trial court's setting of the residential schedule and calculation of child support. We affirm the trial court's judgment on both issues and also deny the competing requests for attorney fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Charles G. Ward, Murfreesboro, Tennessee, for the appellant, Michael Joseph Turk, Jr.

Daryl M. South and David O. Haley, Murfreesboro, Tennessee, for the appellee, Jennifer Blair Dematteo Turk.

## OPINION

### I.    BACKGROUND

Michael Joseph Turk, Jr. ("Father") and Jennifer Blair Dematteo Turk ("Mother") married in October 1999. This was the first marriage for both parties. Three children were born of the marriage, namely Michael, Zachary, and August (collectively "the Children"), born in 2002, 2004, and 2011, respectively. The parties worked outside of the home for the majority of the marriage, each earning a substantial amount of money. The parties lived an extravagant lifestyle that ultimately led to their filing of bankruptcy when Mother was no longer able to maintain steady employment.

Mother filed a complaint for divorce on October 23, 2017, alleging irreconcilable differences and inappropriate marital conduct, to which Father responded with a counter-complaint for divorce, alleging adultery, inappropriate marital conduct, and irreconcilable differences. The divorce itself was not particularly contentious as evidenced by the parties' agreement on the division of marital property and Father's designation as the primary residential parent of the Children to allow for their continued placement in the desired school district. The parties also adhered to a temporary 50/50 split of co-parenting time, with each party exercising two days of co-parenting time per week and alternating weekends. A typical week allowed for Father to exercise co-parenting time on Monday/Tuesday, Mother to exercise co-parenting time on Wednesday/Thursday, and one party cared for the Children from Friday through Sunday on an alternating basis.

However, the relationship between the parties was contentious, at best. Mother characterized Father as verbally abusive, angry, and demeaning toward herself and the Children, while Father criticized Mother's drinking habits, lack of involvement with the Children, and inability to maintain employment. During the pendency of the divorce, Mother began a romantic relationship with another man. Father, on at least three occasions, appeared at Mother's residence unannounced to find Mother with this other man. One such occasion led to a physical altercation between Father and the man in front of two of the Children.

The case proceeded to a hearing on December 18, 2018, on the issues of the division of marital debt, spousal support, child support, and the setting of the residential schedule. The case was heard over the course of several days over the next few months, finally concluding on February 25, 2019. A number of witnesses testified concerning the contentious relationship between the parties, each party's fault in the demise of the marriage, and each party's inadequacies in raising the Children.

Several witnesses also testified concerning each party's propensity to drink alcohol. Notably, Mother also admitted to drinking alcohol and taking six Xanax pills, resulting in her hospitalization. She claimed rehabilitation and stated that she is receiving counseling to manage her anxiety.

Mother presented recordings of Father in which he berated her and referred to her in a derogatory manner and another recording of him berating one of the Children for burning oatmeal. Father, in turn, presented a video of Mother referring to the Children in a derogatory manner.

Relative to income and future earning potential, Mother, who was 45 years old at the time of the hearing, has a Bachelor's Degree and has earned a significant amount of money in pharmaceutical sales throughout the marriage. She worked for one company for approximately ten years, at one time earning in excess of $100,000 per year. Her employment was terminated in October 2010. She decided to stay home to care for the

youngest child, August, once he arrived. She returned to work in June 2012 with another pharmaceutical sales company, earning from $60,000 to $80,000 per year. She switched companies again in 2015, resulting in her receiving a base salary of $70,000, plus bonuses, per year. Her employment was terminated in August 2016. Since that time, she has been unable to maintain steady employment in her field and has become reliant upon her mother and stepfather, who contribute approximately $2,500 per month.[1] She now works at a pet store, earning $11 per hour.

Meanwhile, Father, who was 49 years old at the time of the hearing, has maintained steady employment, earning in excess of $10,000 per month. He was tasked with maintaining the parties' monthly bills during the pendency of the hearing as spousal support and has also paid for the Children's activities and health insurance. He maintained that Mother was voluntarily underemployed. Accordingly, he sought an imputation of income commensurate with her work history.

Relative to the residential schedule, Father requested the majority of co-parenting time, leaving Mother with alternating weekends with the Children. Michael and Zachary testified concerning their preference, both stating that they wished to spend the majority of their time with their father and visit their mother on alternating weekends. They described their father's house as more "home-like" and claimed that he provided a better environment for them and August.

Following the hearing, the trial court found fault on both sides and declared the parties divorced pursuant to Tennessee Code Annotated section 36-4-129(b).[2] The court then divided the marital debt and ordered Father to pay Mother's portion of the marital debt as a form of alimony in solido. The court denied all other forms of spousal support. While acknowledging Michael and Zachary's preference testimony, the court determined that a residential schedule providing for a 50/50 split of co-parenting time was appropriate to "maximize parenting time with both parents, encourage a continued relationship with both parents, and keep the [C]hildren together as siblings." The court then calculated Father's child support obligation using Mother's claimed income of $2,063 per month, thereby denying Father's claim of voluntary underemployment and ordering him to remit payment of $1,271 per month in child support. This appeal followed.

---

[1] Mother claims, and her relatives confirmed, that she is expected to return their payments when financially able.

[2] "The court may . . . declare the parties to be divorced, rather than awarding a divorce to either party."

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

(A)    Whether the court erred in its setting of the residential schedule.

(B)    Whether the court erred in its calculation of child support.

(C)    Whether either party is entitled to attorney fees on appeal.

## III.    STANDARD OF REVIEW

This case was tried by the court without a jury.  The review of the trial court's findings of fact is de novo with a presumption of correctness unless the evidence preponderates otherwise.  Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).  Our review of a trial court's conclusions of law is de novo upon the record with no presumption of correctness.  *Tyron v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008).

Our Supreme Court has explained:

Because decisions regarding parenting arrangements are factually driven and require careful consideration of numerous factors, trial judges, who have the opportunity to observe the witnesses and make credibility determinations, are better positioned to evaluate the facts than appellate judges.  Thus, determining the details of parenting plans is peculiarly within the broad discretion of the trial judge.  It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court.  A trial court's decision regarding the details of a residential parenting schedule should not be reversed absent an abuse of discretion.

*Armbrister*, 414 S.W.3d at 693 (internal citations and quotations omitted).  Likewise, the setting of child support is also a discretionary matter.  *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).  The abuse of discretion standard "does not permit an appellate court to substitute its judgment for that of the trial court, but 'reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives.'"  *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citations omitted).

# IV. ANALYSIS

## A.

Pursuant to Tennessee Code Annotated section 36-6-404(a), any final decree in an action for separate maintenance involving a minor child shall incorporate a permanent parenting plan, defined in Tennessee Code Annotated section 36-6-402(3) as "a written plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a residential schedule, as well as an award of child support[.]" The trial court is charged with determining a residential schedule, which defines one party as the primary residential parent and designates in which parent's home the child will reside on given days during the year. Tenn. Code Ann. § 36-6-402(5). Additionally, Tennessee Code Annotated section 36-6-401(a) provides, in pertinent part:

> The general assembly recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests. The best interests of the child are served by a parenting arrangement that best maintains a child's emotional growth, health and stability, and physical care.

When developing a parenting plan, the court should consider the factors set forth in Tennessee Code Annotated section 36-6-106(a). These factors are as follows:

> (1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;
>
> (2) Each parent's [ ] past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents [ ] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents [ ] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent [ ] to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent [ ] denying parenting time to either parent in violation of a court order;
>
> (3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)     The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)     The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)     The love, affection, and emotional ties existing between each parent and the child;

(7)     The emotional needs and developmental level of the child;

(8)     The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child[;]

(9)     The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)    Evidence of physical or emotional abuse to the child, to the other parent or to any other person.  The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)    The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)    The reasonable preference of the child if twelve (12) years of age or older[;]

(14)    Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)    Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-106(a)(1)-(15).  Although the court is obligated to consider the applicable statutory factors, "the statute does not require a trial court, when issuing a memorandum opinion or final judgment, to list every applicable factor along with its

conclusion as to how that particular factor impacted the overall custody determination." *Burnette v. Burnette*, No. E2002-01614-COA-R3-CV, 2003 WL 21782290, at *6 (Tenn. Ct. App. July 23, 2003).

Despite Father's claim to the contrary, the record reflects that the trial court considered the relevant factors before crafting a residential schedule to accommodate the unique circumstances of this case. While each parent exhibited concerning behavior and would likely benefit from regular counseling, each parent enjoyed a loving relationship with the Children. The parties also evidenced his or her capability of adequately caring for them on a regular basis. We, like the trial court, acknowledge that the residential schedule was not in keeping with the reasonable preference of the Children, namely Michael and Zachary. However, to limit Mother's parenting time in the manner suggested by them and Father would not allow her the maximum participation possible in the lives of the Children, all three of which will benefit from a relationship with their mother. *See* Tenn. Code Ann. § 36-6-106(a) ("In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child[.]"). With all of the above considerations in mind, we conclude that the trial court did not abuse its discretion in setting the residential schedule.

B.

Father first claims that the court erred in calculating Mother's gross monthly income and erroneously declined to issue a finding of voluntary underemployment and to impute a reasonable income given her work history. "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn. Code Ann. § 36-5-101(e)(1)(A).

The Guidelines provide that a court may impute income "[i]f a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed." Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2). The court found as follows concerning Mother's income and future earning potential:[3]

> [Mother is] capable of being a high wage earner. [She] was terminated from her job at Lodan Vision due to no fault of her own. The court finds that there was nothing that she did that was inappropriate, it was simply that

---

[3] The court provided this analysis in support of its decision to deny rehabilitative alimony but then accepted Mother's income information for child support purposes in deference to the entirety of the evidence presented.

the position got eliminated. [Mother] has tried to get back into the pharmaceutical sales world without success at this point. She has tried to network and do other things to keep her employment up, but has not yet been successful in doing so at this point. She is ultimately working a position which is not financially rewarding, but the court is confident that she will be able to continue in her efforts to secure a better employment position than what she has now, if not surpassing the income she earned in the past. The court would consider this to be only a temporary hiccup in [Mother's] employment and believes she will return to the relative earnings she has had in the past.

We agree with the court's assessment and corresponding denial of Father's claim of voluntary underemployment. We, like the trial court, are confident that Mother will return to the workforce in a position commensurate with her experience given the court's denial of any additional spousal support. Further, Father's child support obligation will decrease as each child attains the age of majority, leaving Mother unable to enjoy the standard of living she was once accustomed to unless she obtains suitable employment.

Father next claims that the court erroneously failed to count Mother's receipt of $2,500 per month from her mother and stepfather as gross income for child support purposes. He believes the payments should be characterized as a gift. The Guidelines define gross income as follows:

> [A]ll income from any source (before deductions for taxes and other deductions such as credits for other qualified children), whether earned or unearned, and includes but is not limited to, the following: . . . Gifts that consist of cash or other liquid instruments, or which can be converted to cash.

Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(1)(xviii). Mother testified, and her relatives confirmed, that the support she received was not a gift and that the eventual return of the amount provided was expected. With all of the above considerations in mind, we affirm the court's child support determination.

### C.

Each party requests attorney fees on appeal. As we have stated:

> [I]t is in the sole discretion of this court whether to award [attorney] fees on appeal. As such, when this court considers whether to award [attorney] fees on appeal, we must be mindful of "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the

requesting party sought the appeal in good faith, and any other equitable factor that need be considered."

*Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723, at \*13 (Tenn. Ct. App. Sept. 18, 2007) (quoting *Dulin v. Dulin*, No. W2001-02969-COA-R3-CV, 2003 WL 22071454 (Tenn. Ct. App. Sept. 3, 2003)) (other internal citations omitted). Taking these factors into account, we respectfully deny the competing requests for attorney fees on appeal.

## V.    CONCLUSION

We affirm the judgment of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Michael Joseph Turk, Jr.

_____
JOHN W. MCCLARTY, JUDGE