IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS APRIL 7, 2006

## LATREAYL MITCHELL v. MICHAEL GREEN

**Direct Appeal from the Juvenile Court for Shelby County**
**No. L6977      George Blancett, Judge**

_____

**No. W2005-01057-COA-R3-JV - Filed May 30, 2006**

_____

In this appeal, we are asked to determine whether the juvenile court erred when it increased the amount of child support the father was required to pay the mother for their child born out of wedlock. The father originally filed a petition to modify child support seeking to decrease his child support obligation based on the fact that he had another child with another woman that currently resides with him. The juvenile court increased his child support obligation finding that he failed to visit his child after the mother moved to Knoxville, Tennessee, including certain periods of time when the mother brought the child to Memphis, Tennessee to visit the father. The father contends that it was error for the juvenile court to increase his child support obligation because the mother was in violation of the parental relocation statute, section 36-6-108 of the Tennessee Code, and that the father was prevented from visiting his child due to the distance and his medical condition. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Britton J. Allan, Memphis, TN, for Appellant

Gail W. Horner, Germantown, TN, for Appellee

# OPINION

## I. FACTS & PROCEDURAL HISTORY

On November 3, 1999, Michael Green ("Green" or "Appellant") and Latreayl Mitchell ("Mitchell" or "Appellee" or collectively with Green, the "Parties") had a child out of wedlock. Thereafter, Mitchell filed a petition with the juvenile court to establish parentage. The juvenile court entered an order finding Green to be the father of the child and requiring Green to pay $322 per month in child support. On October 4, 2000, Green filed a petition for visitation seeking visitation "every other weekend, holidays and vacation weeks during summer months" of the Parties' child. The juvenile court referee initially granted temporary visitation privileges to Green. Subsequently, the juvenile court referee dismissed Green's petition stating that Green failed to appear at the hearing on Green's motion. In August of 2003, Mitchell moved to Knoxville, Tennessee with the Parties' child. On October 13, 2003, the juvenile court entered an administrative order for modification of current support increasing Green's child support obligation to $574 per month without fees.

On October 5, 2004, Green filed a petition to modify child support seeking to decrease his child support obligation based on the fact that he had another child born on July 7, 2004 with another woman. After a hearing on Green's petition, the juvenile court referee recommended that the juvenile court's previous child support order should be modified to increase Green's monthly obligation to $700 due to Green's lack of visitation with the Parties' child. The juvenile court referee also recommended that Green pay $300 for Mitchell's attorney's fees. On December 10, 2004, Green filed a request for hearing before the presiding judge of the juvenile court. On April 14, 2005, the juvenile court entered an order increasing Green's monthly child support from $574 to $1078.00 monthly beginning May 1, 2004 due to Green's lack of visitation with the Parties' child.

## II. ISSUE PRESENTED

Appellant has timely filed his notice of appeal and presents the following issue for review:
1.      Whether the juvenile court erred when it increased Appellant's child support obligations based on his lack of visitation with his child.

For the following reasons, we affirm the decision of the juvenile court.

## III. STANDARD OF REVIEW

This Court reviews findings of fact by a trial court sitting without a jury under a *de novo* standard with a presumption of correctness for the trial court's findings. Tenn. R. App. P. 13(d). This Court reviews a trial court's conclusions of law under a *de novo* standard with no presumption of correctness for those findings. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

"We review child support decisions for abuse of discretion." *Lindsay v. Lindsay*, No. M2005-00207-COA-R3-CV, 2006 Tenn. App. LEXIS 51, at *7 (Tenn. Ct. App. Jan. 25, 2006) (citing *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244 (Tenn. Ct. App. 2000)). "However, a trial court's discretion is limited because such 'discretion must be exercised within the strictures of the Child Support Guidelines.'" *Id.* (quoting *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000)).

Under an abuse of discretion standard, we must consider "(1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives." *State v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000) (citations omitted). Further, "[w]hile we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative." *Id.*

## IV. DISCUSSION

On appeal, Appellant asserts that the juvenile court erred when it increased his monthly child support obligations. Pursuant to section 36-5-101(g)(1) of the Tennessee Code, upon a petition for modification of child support obligations, a trial court

> shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines . . . , between the guidelines and the amount of support currently ordered, unless the variance has resulted from a previous court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed.

Tenn. Code Ann. § 36-5-101(g)(1) (2005). The child support guidelines in effect at the time of the hearing define a significant variance as

> 1. At least a fifteen percent (15%) change in the gross income of the ARP;[1] and/or
>
> 2. A change in the number of children for whom the ARP is legally responsible and actually supporting; and/or
>
> 3. A child supported by this order becoming disabled; and/or

---

[1] Under the child support guidelines, ARP stands for the Alternate Residential Parent, which is "the parent with whom the child resides less than fifty percent (50%) of the time." Tenn. Comp. Admin. R. & Regs. 1240-2-4-.02(4) (2005).

4. The parties voluntarily entering into an agreed order to modify support in compliance with these Rules, and submitting completed worksheets with the agreed order; and

5. At least a fifteen percent (15%) change between the amount of the current support order and the amount of the proposed support order if the current support is one hundred dollars ($ 100) or greater per month and at least fifteen dollars ($ 15) if the current support is less than one hundred dollars ($ 100) per month; or

6. At least a seven and one-half percent (7.5% or 0.075) change between the amount of the current support order and the amount of the proposed support order if the tribunal determines that the adjusted gross income of the parent seeking modification qualifies that parent as a low-income provider.

Tenn. Comp. Admin. R. & Regs. 1240-2-4-.05(2)(b)(1)-(6) (2005). Further,

[u]pon a demonstration of a significant variance, the tribunal shall increase or decrease the support order as appropriate in accordance with these Guidelines unless the significant variance only exists due to a previous decision of the tribunal to deviate from the Guidelines and the circumstances that caused the deviation have not changed. If the circumstances that resulted in the deviation have not changed, but there exist other circumstances, such as an increase or decrease in income, that would lead to a significant variance between the amount of the current order, excluding the deviation, and the amount of the proposed order, then the order may be modified.

Tenn. Comp. Admin. R. & Regs. 1240-2-4-.05(6) (2005). When determining the amount of child support a parent is responsible for, the child support guidelines

presume that, in Tennessee, when parents live separately, the children will typically reside primarily with one parent, the PRP,[2] and stay overnight with the other parent, the ARP, a minimum of every other weekend from Friday to Sunday, two (2) weeks in the summer, and two (2) weeks during holidays throughout the year, for a total of eighty (80) days per year. The Guidelines also recognize that some families may have different parenting situations and, thus, allow for an adjustment in the ARP's child support obligation, as appropriate,

---

[2] Under the child support guidelines, PRP stands for the Primary Residential Parent, which, generally, is "the parent with whom the child resides more than fifty percent (50%) of the time." Tenn. Comp. Admin. R. & Regs. 1240-2-4-.02(19)(a) (2005).

in compliance with the criteria specified below. The calculations made for each parenting situation are based on specific factual information regarding the amount of time each parent has with the child.

Tenn. Comp. Admin. R. & Regs. 1240-2-4-.03(6)(e)(1) (2005).  As such,

[i]f the ARP spends fifty-three (53) or fewer days per calendar year with a child, an assumption is made that the primary residential parent (PRP) is making greater expenditures on the child for items such as food and baby-sitting associated with the increased parenting time by the PRP, and an increase in the ARP's child support obligation may be made to account for these expenses, as set forth in this chapter.

(ii) The ARP's child support obligation may be increased for the reduction in days of the ARP's parenting time based upon the following schedule:

53 -- 39 days = 10% increase in support

38 -- 24 days = 20% increase in support

23 -- 9 days = 30% increase in support

8 -- 0 days = 35% increase in support

(iii) The presumption that less parenting time by the ARP should result in an increase to the ARP's support obligation may be rebutted by evidence.

Tenn. Comp. Admin. R. & Regs. 1240-2-4-.03(6)(e)(3) (2005).  The purpose behind increasing child support obligations based on lack of visitation is "not [based on] the reasonableness of the lack of visitation, but instead aimed at the protection of the best interest of the child . . . ." **Smith v. Smith**, No. M2000-02186-COA-R3-CV, 2001 Tenn. App. LEXIS 673, at *25 (Tenn. Ct. App.Sept. 11, 2001).  An increase in child support obligations based on a lack of visitation "reflects the economic realities faced by the obligee/custodial parent who, in addition to having a larger share of custody than contemplated . . . , also assumes a larger share of the financial burden in caring for the children." **Kurts v. Parrish**, No. W2004-00021-COA-R3-CV, 2004 Tenn. App. LEXIS 771, at *12-13 (Tenn. Ct. App. Nov. 17, 2004) (citations omitted).

In this case, it is undisputed that Appellant filed a petition to modify his child support obligations seeking a downward modification because of the birth of his second child.  When the juvenile court calculated Appellant's proposed support, it was much greater than fifteen percent of

his current support.[3] The increase was in large part due to his lack of visitation with the Parties' child.

However, the child support guidelines do allow Appellant, as alternate residential parent, to present evidence to rebut the increase warranted by a lack of visitation. On appeal, Appellant contends that the juvenile court erred when it did not credit Appellant for his lack of visitation (1) because he demonstrated that Appellee undermined Appellant's ability to visit their child when Appellee moved more than 100 miles away from Appellant with their child without complying with the parental relocation statute, section 36-6-108 of the Tennessee Code and (2) because he demonstrated that his medical condition prevents him from driving to see his child. In essence, Appellant contends that these hindrances should rebut the presumption that his lack of visitation with the Parties' child should warrant an increase in his child support.

First, Appellant argues that because Appellee moved from Memphis, Tennessee to Knoxville, Tennessee without complying with the parental relocation statute, section 36-6-108 of the Tennessee Code, Appellee has hindered his ability to visit his child. Appellant argues that this hindrance should have been taken into consideration by the juvenile court when it modified his child support obligation.

Section 36-6-108 of the Tennessee Code states in pertinent part:

> (a) If a parent who is spending intervals of time with a child desires to relocate outside the state or more than one hundred (100) miles from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail. Unless excused by the court for exigent circumstances, the notice shall be mailed not later than sixty (60) days prior to the move. The notice shall contain the following:
>
> (1) Statement of intent to move;
>
> (2) Location of proposed new residence;
>
> (3) Reasons for proposed relocation; and
>
> (4) Statement that the other parent may file a petition in opposition to the move within thirty (30) days of receipt of the notice.
>
> (b) Unless the parents can agree on a new visitation schedule, the relocating parent shall file a petition seeking to alter visitation. The

---

[3] Appellant's child support obligation at the time he petitioned the juvenile court for modification was $574. The juvenile court found that his proposed support should be $1078, resulting in an increase of $504.

court shall consider all relevant factors, including those factors enumerated within subsection (d). The court shall also consider the availability of alternative arrangements to foster and continue the child's relationship with and access to the other parent. The court shall assess the costs of transporting the child for visitation and determine whether a deviation from the child support guidelines should be considered in light of all factors including, but not limited to, additional costs incurred for transporting the child for visitation.

Tenn. Code Ann. § 36-6-108(a)-(b) (2005).

In this case, it is undisputed that Appellee moved with the Parties' child more than one hundred miles from Appellant. Although Appellee testified that she informed Appellant that she was moving to Knoxville, nothing in the record demonstrates that she complied with the notice requirements of the parental relocation statute. Further, Appellee did not attempt to work out a visitation schedule with Appellant and did not ask the court to set a proper visitation schedule. Appellant argues that these failures on Appellee's part constituted an intentional contribution to his lack of visitation, and, thus, his lack of visitation should not result in an increase of his child support obligations.

However, despite Appellee's intentional contribution to Appellant's lack of visitation, Appellant has not demonstrated how Appellee's compliance with the parental relocation statute, including implementing a different visitation schedule, would alleviate his lack of visitation with his child. At the juvenile court hearing, Appellee testified without rebuttal that she and the Parties' child returned to Memphis on six occasions on their own accord and that Appellant would exercise some visitation time with his child but never had the child stay overnight with him. Appellant even admitted that Appellee brought their child to visit although he could not remember the exact number of times Appellant did so. According to Appellee's unrebutted testimony, Appellant has never asked Appellee if their child could come to Memphis for an overnight visit. Further, Appellant admitted at the juvenile court hearing that he has made no attempts to establish visitation with his child. As such, we find that the juvenile court did not abuse its discretion when determining Appellant's child support obligation as it had a sufficient evidentiary foundation for determining Appellant's child support without giving him credit for his lack of visitation based on Appellee's violation of the parental relocation statute and as it properly applied the governing law.

Likewise, Appellant's medical condition does not provide an exception for the application of the child support guidelines in this case. At the hearing, Appellant testified that he cannot drive to Knoxville because he suffers from post traumatic stress disorder. Appellee contends that Appellant provided no proof other than his own testimony to prove that he was medically unable to travel to Knoxville to visit the Parties' child, and, thus, was insufficient to prove his medical condition. However, as we have previously stated in *Tyner v. Tyner*, No. 48, 1985 Tenn. App. LEXIS 3285 (Tenn. Ct. App. Dec. 5, 1985), "a lay witness may testify to [his or] her own physical

condition if [he or] she sets forth facts . . . ." *Id.* at *6 (allowing a wife to testify as to her deteriorating health condition to determine her ability to earn future income).

Although in this case, Appellant's testimony can be sufficient proof to establish his medical condition, Appellant admitted that his medical condition did not prevent him from taking alternate modes of transportation to visit his daughter. Additionally, as stated earlier, Appellant has admitted to taking no steps to establish visitation with his child. Further, according to Appellee's unrebutted testimony, Appellants minimally visited with the Parties' child when Appellee would bring the child to Memphis to visit Appellant and never kept the Parties' child overnight. As such, we find that the juvenile court did not abuse its discretion when determining Appellant's child support obligation as it had a sufficient evidentiary foundation for determining Appellant's child support without giving him credit for his medical condition and as it properly applied the governing law. Accordingly, we affirm the decision of the juvenile court increasing Appellant's child support obligations.

## V. CONCLUSION

For the foregoing reasons, we affirm the decision of the juvenile court increasing Appellant's child support obligations. Costs of this appeal are taxed to Appellant, Michael Green, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE