IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 26, 2015 Session

## WILLIAM STEPHANSON McCLOUD, II v.
## KIMBERLY DENISE McCLOUD

**Appeal from the Circuit Court for Hamblen County**
**No. 13CV094     Hon. Thomas J. Wright, Judge**

**No. E2015-00289-COA-R3-CV-FILED-DECEMBER 9, 2015**

This is a divorce action in which the trial court granted the husband a divorce and entered a parenting plan, designating the husband as the primary residential parent but awarding the wife substantially equal co-parenting time with the minor child. The husband appeals, raising numerous issues relating to the parenting plan. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J. and D. MICHAEL SWINEY, J., joined.

Douglas R. Beier, Morristown, Tennessee, for the appellant, William Stephanson McCloud, II.

Jill R. Talley, Dandridge, Tennessee, for the appellee, Kimberly Denise McCloud.

## OPINION

### I.     BACKGROUND

Kimberly Denise McCloud ("Wife") and William Stephanson McCloud, II ("Husband") were married on July 16, 2005. A girl ("the Child") was born of the marriage. Throughout the marriage, Husband worked as a teacher, while Wife was employed by a factory as a sales representative on an hourly basis.

In May 2013, Husband sought a divorce after approximately seven years of marriage. Husband alleged that he was entitled to a divorce based upon Wife's adultery and inappropriate marital conduct. He sought designation as the Child's primary

residential parent. Wife responded by filing a counter-complaint for divorce, alleging that she was entitled to a divorce based upon Husband's inappropriate marital conduct and irreconcilable differences. She also sought designation as the Child's primary residential parent.

During the pendency of the hearing on the competing complaints for divorce, a temporary parenting plan was entered in which Husband and Wife (collectively "the Parents") shared equal co-parenting time and the marital residence, namely one parent resided with the Child in the residence for one week, while the other resided elsewhere until the following week. The temporary parenting plan was later modified to allow either Husband or the maternal grandparents to care for the Child when the Child was not in school while Wife was working. Husband was given the right of first refusal.

A hearing was held on the competing complaints for divorce on August 19, 2014. As pertinent to this appeal, Husband, who was 52 years old at the time of the hearing, testified that since 1999, he has been employed by a middle school as a seventh grade social studies teacher. He provided that his current annual salary is approximately $41,425. He stated that he is very involved with the school system and had been honored as teacher of the year two years prior to the hearing. He provided that he coached several different sports throughout the years and had even served as the Child's softball coach at one time. He related that he is also heavily involved with the Child's church activities and had been asked to lead a class at their church.

Husband testified extensively concerning his loving relationship with the Child from birth until the time of the hearing.[1] He asserted that he took the Child to and from school, prepared dinner for her, and then engaged the Child in various activities all before Wife returned home between 7:30 and 8:30 p.m. He stated that he was able to spend extensive time with the Child because they shared the same schedule as a result of his employment as a teacher. He agreed that Wife had been present for some vacations and outings throughout their marriage and had cared for the Child while he went on hunting and fishing trips. He acknowledged that Wife had also taken the Child to and from school and stayed home with the Child as needed for sickness. However, he asserted that he spent copious amounts of time with the Child while Wife was either working or spending time with her paramours.

Husband explained that Wife had at least two affairs during their marriage, one in 2009 and one in 2012. He claimed that he caught Wife with a married man in an abandoned parking lot in April 2012. He admitted that he assaulted the man after he confronted them in the parking lot. He later learned that Wife had been involved with a

---

[1] Larry Yount testified concerning Husband's loving relationship with the Child. He admitted that Wife also acted as a loving parent to the Child.

different married man in 2009. He requested ownership of the marital residence[2] because he feared that Wife would marry her current paramour and move to Jefferson City.

Wife, who was 45 years old at the time of the hearing, also testified extensively concerning her loving relationship with the Child from birth until the time of the hearing. She related that she had taken the Child to school in the morning since the Child started kindergarten. She admitted that Husband began taking the Child to school every Friday after he filed his complaint for divorce. She stated that either Husband or other family members retrieved the Child from school. She provided that she took the Child to church when possible and claimed that Husband only recently began attending church regularly.

Wife testified that she was currently employed as an inside sales representative with an hourly wage of approximately $16.92. She stated that she has worked throughout her marriage to Husband and that she routinely worked throughout the summer, with the exception of two weeks of vacation. She explained that Husband often took the Child on trips during summer or other school breaks while she was working. She asserted that she cared for the Child when Husband left for hunting and fishing trips and that she was present for trips with the family when she was able to take vacation time. She agreed that Husband was a good father. However, she believed that he purposefully interfered with her relationship with the Child since he learned of her affair.

Wife admitted to her affair with Scott Delaney, a man who worked in her office. She opined that Mr. Delaney was "one of the most honest, kind, caring people I've ever known." She admitted that he "had a problem with drugs in the past." She claimed that Husband learned of the affair after he put a tracking device on her car and found her with Mr. Delaney. She asserted that Husband assaulted Mr. Delaney and later called her place of employment to request that she be kept away from Mr. Delaney during work hours.

Wife testified that the Child was never present when she was with Mr. Delaney and that she only spent time with him during work hours. She acknowledged that she planned to continue her relationship with Mr. Delaney but denied any intention of marrying or moving in with him immediately following the divorce. She asserted that she intended to find a residence for her and the Child.

Wife claimed that the Child continued to do well in school, despite the changes in the family since Husband filed his complaint for divorce. She stated that her schedule would allow her to leave work between 4:30 and 5:00 p.m. during her co-parenting time. She requested designation as the Child's primary residential parent but agreed that equal co-parenting time with Husband was important for the Child.

---

[2] George Gant testified that he appraised the residence for $130,000.

Following the presentation of the above evidence, as pertinent to this appeal, the trial court granted Husband's request for divorce on the ground of inappropriate marital conduct. The court awarded Husband the marital residence, designated him as the primary residential parent, and ordered him to enroll the Child in the Hamblen County School System. However, the court awarded each parent substantially equal co-parenting time, with Husband receiving 184.5 days of co-parenting time, and Wife receiving 180.5 days of co-parenting time. The court's award accounted for Husband's exercise of co-parenting time while Wife was at work during her co-parenting time in the summer, with the exception of two-weeks when the maternal grandparents were permitted to provide childcare during Wife's co-parenting time. The court agreed that Husband should be given the option to exercise co-parenting time if the maternal grandparents were unable to provide childcare. The court denied Husband's request for child support, finding that a downward deviation was appropriate when the child support worksheet yielded an inconsequential obligation of $5 per month. The court also found that the Parents should alternate the yearly federal income tax exemption. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.  Whether the trial court erred in setting the residential schedule in the parenting plan.

B.  Whether the trial court erred in denying Husband's request for child support and the yearly federal income tax exemption.

## III. STANDARD OF REVIEW

Trial courts have broad discretion to fashion parenting plans that best suit the unique circumstances of each case. *See Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999). "Because '[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves,' appellate courts 'are reluctant to second-guess a trial court's decisions.'" *Johnson v. Johnson*, 165 S.W.3d 640, 645 (Tenn. Ct. App. 2004) (quoting *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)). Thus, appellate courts should only set aside the trial court's judgment in such cases when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

"In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption,

the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn. Code Ann. § 36-5-101(e)(1)(A); *see generally* Tenn. Comp. R. & Regs. 1240-2-4. Trial courts have discretion to set the amount of child support within the strictures of the Guidelines promulgated by the Tennessee Department of Human Services. Accordingly, we review a trial court's decision involving child support for an abuse of discretion. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). In reviewing the trial court's decision we consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the trial court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives. *Id.*

## IV.   DISCUSSION

### A.

Husband takes issue with the residential schedule in the parenting plan. He requests additional co-parenting time and a requirement entitling him to co-parenting time each time the Child is absent from school for any reason and Wife is required to work. Likewise, he also objects to the provision in the parenting plan in which the court provided the maternal grandparents with two weeks of co-parenting time in the summer while Wife is at work during her co-parenting time. Wife responds that the trial court did not abuse its discretion in setting the residential schedule in the parenting plan.

Any final decree in an action for divorce involving a minor child must incorporate a permanent parenting plan with a residential schedule. Tenn. Code Ann. § 36-6-404(b). Tennessee Code Annotated section 36-6-402(5), defines a residential schedule as follows:

> "Residential schedule" is the schedule of when the child is in each parent's physical care, and it shall designate the primary residential parent; in addition, the residential schedule shall designate in which parent's home each minor child shall reside on given days of the year, including provisions for holidays, birthdays of family members, vacations, and other special occasions, consistent with the criteria of this part; provided, that nothing contained herein shall be construed to modify any provision of § 36-6-108[.]

In setting the residential schedule, trial courts are instructed to "make residential provisions for each child, consistent with the child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the child." Tenn. Code Ann. § 36-6-404(b). If a parent's interaction with the child is not restricted by statute, the court must also consider

the factors found in Tennessee Code Annotated section 36-6-106(a), which provides, in pertinent part, as follows:

(a)     In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:

(1)     The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2)     Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. . . .;

(3)     Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)     The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)     The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)     The love, affection, and emotional ties existing between each parent and the child;

(7)     The emotional needs and developmental level of the child;

(8)     The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .;

(9)     The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)    The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)    Evidence of physical or emotional abuse to the child, to the other parent or to any other person.  The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)    The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)    The reasonable preference of the child if twelve (12) years of age or older.  The court may hear the preference of a younger child upon request.  The preference of older children should normally be given greater weight than those of younger children;

(14)    Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15)    Any other factors deemed relevant by the court.

The record reflects that the trial court considered the relevant factors before crafting a residential schedule to accommodate the unique circumstances of this case. Here, each parent enjoys a loving relationship with the Child and is capable of adequately caring for the Child on a regular basis.  While Husband's work schedule provides him with more flexibility to spend additional time with the Child, the residential schedule

provides Wife with the opportunity to provide care for the Child in an appropriate manner during her workday. Such an allowance is consistent with the Child's developmental level and the family's social and economic circumstances, which encourage each parent to maintain a loving, stable, and nurturing relationship with the Child. Furthermore, contrary to Husband's assertion, the maternal grandparents were not awarded "co-parenting time." Wife was given the option to allow her parents to care for the Child while she is at work during her co-parenting time. This arrangement is in keeping with Tennessee Code Annotated section 36-6-106(a)(9). With all of the above considerations in mind, we conclude that the trial court did not abuse its discretion in setting the residential schedule.

B.

In this state, child support is governed by Tennessee Code Annotated section 36-5-101. "In making the court's determination concerning the amount of support of any minor child or children of the parties, the court shall apply, as a rebuttable presumption, the child support guidelines" that are promulgated by the Tennessee Department of Human Services Child Support Service Division. Tenn. Code Ann. § 36-5-101(e)(1)(A); *see generally* Tenn. Comp. R. & Regs. 1240-02-04. The guidelines "are a minimum base for determining child support obligations. The presumptive child support order may be increased according to the best interest of the child for whom support is being considered, the circumstances of the parties, and the rules of [the] chapter." Tenn. Comp. R. & Regs. 1240-02-04-.01(4). The guidelines provide,

> (1) Required Forms
>
> (a) These rules contain a Child Support Worksheet, a Credit Worksheet, Instructions for both Worksheets, and the Child Support Schedule which shall be required to implement the child support order determination.
>
> (b) The use of the Worksheets promulgated by the Department is mandatory in order to ensure uniformity in the calculation of child support awards pursuant to the rules.

Tenn. Comp. R. & Regs. 1240-02-04-.04 (emphasis added). In setting the amount of support owed, the court may choose to deviate from the guidelines. If the court chooses to deviate, the court "shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child or children, or the equity between the parties." Tenn. Code Ann. § 36-5-101(e)(1)(A). Additionally, the court "shall state the amount of support that

would have been ordered under the child support guidelines and a justification for the variance from the guidelines." Tenn. Code Ann. § 36-5-101(e)(1)(A).

Husband argues that the trial court committed plain error by failing to award him child support as dictated by the child support worksheets. A review of the record reflects that the child support worksheet yielded an obligation of $5 per month. Under these circumstances, we affirm the trial court's downward deviation from the presumptive child support order.

Husband next argues that the trial court erred in failing to allocate the federal income tax exemption to him as the primary residential parent. He argues that alternating the exemption was contrary to the assumptions provided in the guidelines and that the trial court did not have the discretion to deviate from the guidelines in this manner.

The guidelines provide, in pertinent part, as follows:

2. Taxation Assumptions.

> (i)     All income is earned income subject to federal withholding and the Federal Insurance Contributions Act (FICA/Social Security).

> (ii)    The alternate residential parent will file as a single wage earner claiming one withholding allowance, and *the primary residential parent claims the tax exemptions for the child*.

> (iii)   The Schedule's combined obligation includes the tax adjustments for federal withholding and the Federal Insurance Contributions Act (FICA/Social Security).

*See* Tenn. Comp. R. & Regs. 1240-02-04-.03(6)(b)(2) (emphasis added). This court has rejected any attempt to interpret the assumption as a requirement, holding that "Tenn. R. & Reg. 1240-02-04-.03(6)(b)(2) 'simply describes the methodology used to compute spouses' respective net incomes,' and it is merely a mathematical assumption with no bearing on the trial court's discretion to award the tax exemptions." *Blankenship v. Cox*, No. M2013-00807-COA-R3-CV, 2014 WL 1572706, at *15 (Tenn. Ct. App. Apr. 17, 2014) (quoting *Crews v. Staggs*, No. M2010-01624-COA-R3-CV, 2011 WL 2848745, at *2 (Tenn. Ct .App. May 31, 2011)). *See also Taylor v. Taylor*, No. E2013-01734-COA-R3-CV, 2014 WL 3763727, at *12 (Tenn. Ct. App. July 30, 2014) (finding no error in a similar case); *Farmer v. Stark*, No. M2007-01482-COA-R3-CV, 2008 WL 836092, at *9

(Tenn. Ct. App. Mar. 27, 2008) ("[T]he quoted taxable assumption does not constitute a rule bearing on the trial court's discretion to award the tax exemptions."); *Chandler v. Chandler*, No. W2006-00493-COA-R3-CV, 2007 WL 1840818, at *9 (Tenn. Ct. App. June 28, 2007) ("The decision of a trial court regarding the allocation of exemptions for minor children is discretionary and should rest on facts of the particular case."). Here, the trial court found that alternating the yearly tax exemption was appropriate when the Parents received substantially equal parenting time and had comparable incomes. With these considerations in mind, we conclude that the trial court did not abuse its discretion in alternating the yearly tax exemption.

## V.    CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, William Stephanson McCloud, II.

_____
JOHN W. McCLARTY, JUDGE